# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Scott Powers, individually, as Representative of the Estate of Erika Zak, and as the natural guardian of L.P., a minor, § § § § § | |
| Plaintiff, § | CIVIL ACTION NO. _____ |
| § | |
| v. § | |
| § | |
| Constantinos Sofocleous and Memorial Sloan Kettering Cancer Center, § § § | |
| Defendants. § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

## TABLE OF CONTENTS

PARTIES ........................................................................................................................... 3

JURISDICTION ............................................................................................................... 4

VENUE .............................................................................................................................. 4

FACTS ............................................................................................................................... 4

    A.  Baby L.P. and then cancer. ................................................................................. 4

    B.  Erika's liver is destroyed. .................................................................................... 5

    C.  Erika had no quality of life after her liver was ruined. ....................................... 5

CAUSES OF ACTION .................................................................................................... 14

    A.  First Cause of Action: Medical Malpractice ..................................................... 14

    B.  Second Cause of Action: Lack of Informed Consent ....................................... 15

    C.  Third Cause of Action: Wrongful Death .......................................................... 16

DAMAGES ...................................................................................................................... 16

JURY DEMAND ............................................................................................................. 17

Prayer ............................................................................................................................... 17

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

This is a lawsuit for damages from personal injuries suffered by Erika Zak, her widower Scott Powers, and their minor child, LP and for Erika's wrongful death.

Erika died on August 23, 2019 from complications caused by a botched liver ablation procedure performed by Defendant Constantinos Sofocleous at Defendant Memorial Sloan Kettering Cancer Center on April 10, 2017. Her husband, widower, and father of her only child, Plaintiff Scott Powers, shows the Court and Jury the following:

## I.   PARTIES

1. Plaintiff Scott Powers is a resident of Oregon. Scott appears in three capacities in this lawsuit: (1) on behalf of his late wife Erika's estate, (2) on behalf of his and Erika's minor child, L.P., and (3) on behalf of himself.

2. Erika and Scott were married on Halloween 2009 and were still married when Erika died ten years later. They had one daughter, L.P., who was five years old when Erika died. Scott was appointed the Representative of Erika's estate on March 5, 2020 by the Circuit Court of Multnomah County, Oregon

3. Defendant Constantinos Sofocleous is a resident of New York and is licensed to practice medicine in New York. Dr. Sofocleous botched an ablation procedure and irreparably damaged Erika's liver which caused her death two years and four months later.

4. Defendant Memorial Sloan Kettering Cancer Center is a New York corporation and its principal place of business is in New York. The hospital oversaw and supervised the botched ablation procedure and established the faulty protocols and parameters for that procedure.

## II.     JURISDICTION

5.     This Court has diversity subject matter jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)(1) because Plaintiff is a citizen of Oregon, Defendants are citizens of New York, and the amount in controversy exceeds $75,000.

## III.     VENUE

6.     Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b)(1)-(2) because both Defendants reside in the SDNY and because SDNY is where the disastrous—and ultimately fatal—liver ablation procedure happened in 2017.

## IV.     FACTS

### A. Baby L.P. and then cancer.

7.     Erika and Scott's baby, L.P. was exactly three months old on the day that Erika was diagnosed with stage IV colon cancer in 2014. Erika wrote to her family and friends at the time:

> [Redacted] was the happiest day of our lives— the day [L.P.] came into the world. She is growing up to be such a beautiful & hilarious little lady and has stolen our hearts a million times faster than we ever imagined. Words truly cannot express how much joy she has brought to Scott and me in just a few months time.
>
> But as is often said (clichés abound here), sometimes with great joy, comes great sorrow. And, in our case, sorrow completely shook us to our core 3 months to the day [L.P.] was born. On [redacted], I was diagnosed with Stage IV colon cancer that has metastasized to my liver.
>
> When my stomach began to shrink after pregnancy, I noticed a palpable mass in my lower right pelvis and pain near my liver. Having gone through thyroid cancer before, I knew it was important not to put off going to the doctor, though part of me thought this was some kind of postpartum-imposed ailment— perhaps my body just shifting back into place. After an ultrasound and then a CT scan, we received the news that nobody wants to ever hear. The mass in my colon is the size of a grapefruit, and the ones on my liver "too numerous to count". This type of cancer is very rare for somebody my age.

Soon after, Erika underwent a successful surgery to remove the primary tumor from her colon. She responded well to cancer treatments in the ensuing three years such that she was expected to become cancer free.

**B. Erika's liver is destroyed.**

8.  On April 10, 2017, as part of her cancer treatment, Erika underwent a liver ablation procedure at Defendant Memorial Sloan Kettering Cancer Center. The interventional radiologist who performed the procedure, Defendant Constantinos Sofocleous, catastrophically damaged Erika's liver during the ablation procedure and caused internal bleeding, damage to her portal vein, damage to her hepatic artery, a major bile leak, and the complete destruction of the junction of Erika's right and left biliary ducts. As a result of mistakes during the ablation, Erika's liver function was severely and permanently compromised, causing protracted liver failure.

9.  Erika's liver failure—caused by medical errors during the ablation procedure—required a liver transplant to save her life; no other medical solution existed. Erika, her family, and her doctors spent the next two and a half years managing her considerable pain, dealing with constant complications and dangerous infections from the drainage lines coming out of her liver, and trying to obtain a donor liver to save her life. Erika's liver was so severely damaged during the ablation procedure that a living donor transplant, which was originally targeted, was not an option. Erika was approved for listing on the deceased donor waitlist by the Cleveland Clinic in February 2018.

**C. Erika had no quality of life after her liver was ruined.**

10. Erika, Scott, and L.P.'s lives were upended by Defendants when they carelessly destroyed Erika's liver. Erika had no quality of life after the ablation procedure. Outside of their shared focus on their daughter, L.P., Erika and Scott's fulltime and all-consuming jobs after the botched ablation were managing Erika's considerable daily pain, dealing with constant

complications and dangerous infections from the drainage lines coming out of her liver, and trying to obtain a donor liver to save her life. Erika lived in misery, pain, and emotional distress. Scott lived in misery from the constant mental anguish as he watched his life partner, co-parent, and best friend waste away.

11. Because Erika's liver no longer functioned after the April 2017 ablation, her doctors surgically installed biliary drains, tubes that drained bile from her liver to a bag she wore at all times outside her body. The drains caused Erika an incredible amount of distress and pain and required constant management by Erika. They hurt all the time and at times hurt more than Erika knew how to communicate to Scott and her doctors. The drains caused numerous painful, and sometimes frightening, life-threatening infections. Food debris frequently clogged up the drains which required Erika to spend hours every day in the bathroom manipulating them to make sure that there was proper flow.

12. As Erika's liver deteriorated and became increasingly more fragile over the months and then a year and then two years after the botched ablation, her biliary drains bled constantly. Sometimes the drainage fluid was bile mixed with blood and sometimes it was just blood pouring out of Erika's body, 100-200 ml at a time. Erika's blood loss caused severe anemia and required an increasing number of blood transfusions, especially in 2019. The infections related to these drains were numerous and caused Erika to be hospitalized multiple times. The frequent infections meant that Erika received antibiotics intravenously dozens of times and took prophylactic daily oral antibiotics throughout 2018 and 2019. The antibiotics, in turn, contributed to her eating and digestive issues [more detail as to what they were?]. She was never not in pain for over two years from the date of the from the drains.

*Powers v. Sofocleous*, *et al.*  Plaintiff's Original Complaint and Jury Demand
6

13. Erika's daily task of managing her drains was unbelievably cumbersome. She was required to change the dressings often due to leakage, to keep them clean, and to avoid infection. Erika had to manipulate her clogged drain lines often in her constant efforts to get blood, bile, and food debris to pass through. It took her two hours every day just to take a shower due to the time it took to manage of the drains. Scott and L.P. would frequently see the bathroom door closed for hours at a time and knew that Erika was in there struggling to unclog or manage the drains. This was Erika's most time-consuming activity every day. She was forced to spend more time every day dealing with her drains than she was able to spend with her young daughter, L.P.

14. Erika became increasingly jaundiced starting in 2017 after the destruction of the junction of her left and right biliary ducts during the botched ablation. The jaundice was disfiguring and embarrassing for Erika. Even worse than her disfigurement, the same organ disfunction that caused the jaundice also caused severe itchiness. Erika described the itchiness like millions of tiny bugs right under her skin. There was no solution that brought her any measure of relief. None of the medications that she was prescribed to try to combat the itchiness were successful. Scott helped Erika put medicated lotions on her back and legs, but the relief only lasted for a few minutes. There were times when Erika would break down emotionally because of her severe and unrelenting physical torment. It was like nothing Scott had ever witnessed and he went through much with Erika.

15. Erika's quality of life around food was obliterated along with her liver during the botched ablation. Post-ablation Erika could no longer eat for pleasure. Prior to the ablation, Erika loved food. She said that enjoying food was one of the great privileges of her life. Some of Erika and Scott's best memories together and with their friends were eating together and trying a variety of different foods.

16. Post-ablation eating became a very difficult task for Erika. Frequent hospitalizations, various medications, constant pain, and issues with her biliary drains made eating difficult to impossible. Erika could no longer tolerate spicy foods or rich foods. Fibrous foods were also hard on her digestion. Meat and fish were hard to digest and were especially gross as they came—partially digested—through Erika's drains. This was repugnant to Erika, further discouraging her appetite. Multiple daily antibiotics over the long term did not help Erika's digestion. Scott could not order Erika food from restaurants, and Erika could almost never eat what her family was eating. At birthdays and family events Erika wanted to participate but when she tried, she ended up regretting it because her stomach hurt, and she experienced diarrhea afterwards. Ultimately, Erika lived on the few, bland foods that her damaged body could tolerate rice, cereal, and noodles.

17. Erika and Scott were forced to monitor Erika's frequent blood loss so that it would not kill her. Erika lost dangerous amounts of blood—both internally and externally—out of her biliary drains and, as her body reacted to the fallout from her ruined liver, she increasingly bled throughout her body. Her nosebleeds that normally would last a minute, now lasted an hour, and even required a visit from EMS. Scratches on Erika's body from the terrible itching required urgent care visits to stop the bleeding. Her stool sometimes bled from her varices and her drains bled internally and externally. Erika suffered from varices that also bled uncontrollably, sometimes acutely and other times more mildly over a long period. Erika experienced considerable distress upon throwing up blood and seeing blood in her stool. She lived with constant anxiety that one of these bleeds would kill her. The increasing blood loss contributed to Erika's anemia which brought a whole different set of physical suffering.

18. Another source of Erika's constant discomfort and pain was water retention and swelling caused by her liver's failure. As her liver failed, thrombosis caused more fluid to accumulate in Erika's belly and legs. This swelling was a caused distress and pain to Erika every day. Erika and Scott tried a variety of treatments to lessen her agony including compressing leg wraps, compression stockings, and diuretics meant to rid her body of salt (but which caused their own issues).

19. Overtime, after the ablation, Erika's anemia and failing liver wiped out her muscle and strength. She was a diminutive woman but was always relatively (for her size) strong before the botched ablation. But after the ablation, Erika's biliary drains and constant fatigue meant that she could no longer hold her daughter the way she had before the ablation. She could no longer do tasks around the house. She needed a tremendous amount of help as time passed. Her constant fatigue made just walking up and down the stairs difficult especially as her legs ballooned painfully with retained fluid.

20. The combination of Erika's anemia and the overall deterioration of her body cause by her liver failure meant that it was often difficult for Erika to keep her eyes open during the day. She was constantly tired. She desperately wanted to be awake to interact with L.P. during the day, but her pain made it hard to sleep at night and so her internal clock became disoriented.

21. L.P.'s time with her mom (which was so precious to them both) was limited to the house, and often just Erika's bed or the couch. Erika tried to talk and draw with L.P. when she had the strength but over time there were no play dates, no walks, no meals out, no birthday parties, and no vacations. Those normal days—before the ablation—with the family being a family together disappeared from L.P.'s memories. Erika and Scott's relationship changed dramatically as well. Their time together was now conversations about pain and doctors and treatments, and her

mortality—a thought most 30 somethings do not have to contemplate—not events or experiences or physical intimacy, and caring for Erika consumed both their lives.

22. On August 22, 2019 Erika and Scott received the long-awaited and desperately sought news that a donor liver was available. The next day, August 23, 2019—as her surgeon attempted the transplant—Erika died on the operating table. Erika endured immense daily pain and suffering from the date of the botched liver ablation on April 10, 2017 until her death two years and four months later.

23. Erika's posthumous letter to L.P. was published by The Washington Post[1] a month after she died:



Erika Zak with her daughter, Loïe. Zak died during a liver transplant surgery on Aug. 23. (Courtesy of Scott Powers)

---

[1] Available at https://www.washingtonpost.com/opinions/erika-zak-a-posthumous-letter-to-my-daughter/2019/09/18/53a1eb86-d3f2-11e9-9610-fb56c5522e1c_story.html.

By **Erika Zak (with Scott Powers)**

September 18, 2019 at 2:08 p.m. CDT

*Erika Zak had been writing an op-ed for The Post about her struggles with the health-care system when she died on Aug. 23. Her husband, Scott Powers, working with Post editors, completed her draft, a letter to their daughter, by drawing on her social media accounts and other writing. She was 39.*

My Loïe,

Remember when you were tiny and everything was thrilling and radiant? When you stared in wonderment at whatever new thing you just discovered? You felt as though you were the first one to see it — almost as though you invented it. It all felt like magic. And it was.

I had so many of those beautiful moments growing up. I have always wondered why, as I got older, it became a struggle to be brave and speak up the way I did when I was young. My voice became small; at times, nearly a whisper. Of course there were moments when everything felt magical again — like when I met Daddy and fell in love or made something beautiful through art. The biggest swell of magic came when I "met" you, sweet Loïe.

Daddy and I wanted a baby, and although we hadn't been trying long, it felt like an eternity. One day I said to myself, "This has to be it. I know she's in there." I took a pregnancy test, and took another one just to be sure. I gave Daddy a little pouch with the tests inside. He opened it and looked up beaming. We danced a little jig in our tiny apartment.

Even before I realized you were growing inside of me, I began to feel a sea change. My voice grew more powerful. My body felt strong in ways I can't explain. It felt as though I was fighting for something. And so you arrived perfect, pink and magical. We named you after an American dancer in Paris from long ago; a whirling dervish with a spinning technicolor skirt: brave, liberated and determined.

Three months later, I was holding you when the doctor called to say I had Stage 4 cancer. A tumor in my colon and more on my liver. On the day of my first chemo, I Instagrammed a photo of myself all hooked up and wrote: "Here we go magic." I should have written: "Here we go poison."

Soon days ran into each other. I told myself not to complain, joined support groups and raised funds to find a cure. But after seemingly knocking cancer down, it came back. I surpassed 70 rounds of chemo. New friends from those groups died. My daddy died. You — my baby — grew up and learned to talk and walk. I wanted nothing more than to give up and let everyone have their lives back. I cried out for the magic to come back.

Then, during what the doctor presented as a routine procedure, my liver was destroyed. With a large hole left in it, blood and bile no longer flowed properly, and I needed two drains protruding from my abdomen just to stay alive. Mommy's skin turned yellow, it was hard to eat normally, I started to bleed more, and I saw my once-strong body slowly break down a little more each day. Still, every so often, we found some magic: I started an immunotherapy drug, and it worked.

As my cancer vanished, it became obvious I needed a whole new liver. It was my only chance. I fought to stay alive, but the world made it harder. A large insurance company initially denied a transplant, saying my case was not "promising." They told me I had tumors where they didn't exist, said I failed chemo when I hadn't, argued that my liver failure was due to the immunotherapy drug that was actually saving my life.

With few options, I told my story to the media. After the insurance company approved my care, you, me and Daddy quickly moved across the country to wait for a liver. I told myself: "Get sicker to get better." But just when I got to the top of the waiting list, after a year in Cleveland, the bureaucratic organ-sharing system knocked me down again. The message seemed to be that I wasn't sick enough or that my history of cancer excluded me from a fair review. When I pointed out that they set up a new review policy that failed patients including me, they simply dug in their heels and did nothing.

And so my voice grew even louder despite my body getting weaker. A stream of magic and hope trickled in. People cared. The media cared. They covered my story about the broken transplant system. I was vindicated knowing I could make some small difference for someone else. And also that maybe, after all the suffering, I deserved that new liver I thought was never meant for me.

Loïe, the day I was diagnosed five years ago, I wrote you a message telling you that I would fight for you and Daddy; that I wanted to be around to tell you this story has a happy ending. I am fighting with all I have, but if this story ends early, know this — I am with you always; even if you can no longer see my face or feel my hands through your hair. I am with you when you feel a warm breeze upon your sweet face. I am with you when you see a beautiful shade of light ocean blue. I am with you on that first day of spring when the flowers bloom and everything feels new and just right.

But even when you can't find those things — and some days you won't be able to — just know that I am here. I am protecting you, guiding you and sending you all the love I saved up my whole life just for you.

I've read about people who are almost at the end, who will try anything because it's all they have left. I understand them now. I would do anything. Just make it appear; give me some magic back. Give me one last chance so I can start anew.

*Erika Zak died during liver transplant surgery at the Cleveland Clinic in Ohio. Scott Powers lives in Portland, Ore.*

## V. CAUSES OF ACTION

**A. First Cause of Action: Medical Malpractice**

24.  Plaintiff Scott Powers incorporates all the allegations above into this cause of action. Scott brings this claim on behalf of Erika Zak's estate, his and Erika's daughter, and himself.

25.  Erika Zak sought professional medical care from Defendants. Defendant Sofocleous represented that he was competent to perform and render the medical care, treatment, services, and advice sought by Erika. Defendant Sloan Kettering Memorial Cancer Center represented that it and its agents, employees, contractors, and assigns were competent to perform and render the medical care, treatment, services, and advice sought by Erika.

26.  Defendants rendered medical care, diagnosis, treatment, and services to Erika including a medical consultation and a liver ablation procedure.

27.  Defendants' medical care of Erika—including diagnosis, treatment, services, medical consultation, and liver ablation procedure—were rendered carelessly, unskillfully, negligently, and not in accordance with accepted standards for medical care.

28.  Because of Defendants' conduct, Erika suffered injuries, hospitalizations, disfigurement, disability, and enormous pain. Defendants' actions also caused Erika to suffer mental anguish, emotional distress, diminishment of the quality and enjoyment of her life, and loss of consortium with her husband, Scott, and young daughter, L.P.

29.  Because of Defendants' conduct, Erika expended money for medical bills related to her effort to obtain a remedy and stay alive.

30.  Because of Defendants' conduct, Erika's husband, Scott, and her daughter, L.P., suffered loss of consortium with Erika.

31. Because of Defendants' conduct, Erika, Scott, and L.P. sustained general and special damages.

**B. Second Cause of Action: Lack of Informed Consent**

32. Plaintiff Scott Powers incorporates all the allegations above into this cause of action. Scott brings this claim on behalf of Erika Zak's estate, his and Erika's daughter, and himself.

33. Defendants failed to advise Erika Zak of the alternatives to liver ablation treatment and of the reasonably foreseeable risks and complications involved in that procedure. Defendants' failed to tell Erika the information that a reasonable interventional radiologist and hospital would have disclosed.

34. Defendants' failure prevented Erika from making a knowledgeable evaluation about whether to undergo the liver ablation. If Erika, or a reasonably prudent person in her position, had known alternatives and reasonably foreseeable risks and complications, she would not have undergone the liver ablation when other viable treatment modalities remained available.

35. Because of Defendants' conduct, Erika suffered injuries, hospitalizations, disfigurement, disability, and enormous pain. Defendants' actions also caused Erika to suffer mental anguish, emotional distress, diminishment of the quality and enjoyment of her life, and loss of consortium with her husband, Scott, and young daughter, L.P.

36. Because of Defendants' conduct, Erika expended money for medical bills related to her effort to obtain a remedy and stay alive.

37. Because of Defendants' conduct, Erika's husband, Scott, and her daughter, L.P., suffered loss of consortium with Erika.

38. Because of Defendants' conduct, Erika, Scott, and L.P. sustained general and special damages.

### C. Third Cause of Action: Wrongful Death

39. Plaintiff Scott Powers incorporates all the allegations above into this cause of action. Scott brings this claim on behalf of his and Erika's daughter, L.P., and himself.

40. Because of Defendants' conduct, Erika died. As a result, Scott and L.P. have been deprived of Erika's love, aid, and affection. This terrible deprivation will continue in the future.

41. Because of Erika's death, Scott and L.P. sustained general and special damages.

## VI.   DAMAGES

42. Defendants' conduct was a direct, proximate, and producing cause of Erika Zak's liver failure and subsequent death, and of all the general and special damages listed throughout this Complaint that Erika, Scott, and L.P. sustained in the past, and that Scott and L.P. will continue to suffer in the future, including but not limited to:

   a) Hospital, medical, pharmaceutical, and other expenses incurred as a result of Erika Zak's liver failure,

   b) Erika's funeral and burial expenses,

   c) Erika's lost income from the time of the botched ablation until her death,

   d) Erika, Scott, and L.P.'s net pecuniary loss suffered as a result of Erika's liver failure and eventual death,

   e) the economic value of the services that Erika, as a wife and mother, had she lived, would have provided to Scott and L.P.,

   f) damages for grief, loss of companionship, impairment of the quality of life, inconvenience, pain and suffering, and emotional distress incurred by Erika, Scott, and L.P.,

   g) damages for the loss of Erika's love, comfort and consortium that Scott and L.P. would have received from Erika had she lived,

h) Pre-judgment interest from the date of the botched medical procedure through judgment, and

i) Post judgment interest on the judgment at the maximum rate allowed by law.

## VII. JURY DEMAND

43. Plaintiff respectfully demand that all issues of fact in this case be tried to a properly impaneled jury and pays the jury fee.

## PRAYER

44. Based on the foregoing, Plaintiff demands judgment against the Defendants severally, for general damages, special damages, for the costs expended herein, for prejudgment interest from the date of the injury through judgment, and post-judgment interest on the judgment at the maximum rate allowed by law, and for such other and further relief, both at law and in equity, to which Plaintiff may show himself, his daughter, and his late wife's estate to be justly entitled.

Respectfully submitted,

HENDLER FLORES LAW, PLLC.

By: /s/ R. Webber

Rebecca Ruth Webber
rwebber@hendlerlaw.com
Scott M. Hendler
shendler@hendlerlaw.com
**HENDLER FLORES LAW, PLLC**
1301 West 25th Street, Suite 400
Austin, Texas 78705
Telephone: 512-439-3202
Facsimile: 512-439-3201

ATTORNEYS FOR PLAINTIFF