October 6, 2020

VIA ECF FILING ONLY
Hon. Lorna G. Schofield, U.S.D.J.
United States District Court, SDNY
500 Pearl Street
New York, NY 10007

Re:     Powers v. Memorial Sloan Kettering Cancer Center, et al.
       Docket No.   :                    1:20-cv-02625

Dear Judge Schofield:

We submit this joint letter pursuant to Your Honor's Order dated October 5, 2020 (Doc. 75) and request the Court's indulgence to allow us to exceed the standard two-page limit given that both parties are setting forth their positions on a variety of discovery matters as directed by the Court.

    1)    **Plaintiff's request to exceed the limit of ten depositions**

**Plaintiff:** Plaintiff's request to depose fifteen fact witnesses and whatever experts Defendants designate is reasonable where Erika Zak was treated at three major institutions over 28 months due to the damage Defendants caused. Defendant's characterization of the case "one medical procedure performed by one defendant physician" distorts the complexity of this case particularly where Defendants have represented that they intend to designate four experts.

**Defendants**: Defendants' position is that plaintiff's presumptive limit of ten depositions is sufficient to prosecute the claims regarding one medical procedure performed by one defendant physician. Plaintiff cannot satisfy his burden to exceed the limit of ten while impermissibly seeking unnecessary, cumulative and duplicative testimony.

The parties respectfully refer the Court to the parties' position letters. (Docs. 74 and 77).

    2)    **Plaintiff's subpoena on Dr. Solomon**

**Defendants:** Plaintiff is aware that Dr. Solomon had no involvement in the patient's care and treatment at Defendant Memorial. Defendants have offered to provide an Affidavit from Dr. Solomon in an effort to avoid costs associated with a motion to quash the subpoena on the grounds that it does not seek relevant information and subjects Dr. Solomon to undue burden.

**Plaintiff:** Whether Dr. Solomon was one of Erika Zak's treaters is immaterial given that he is both the chair of the department of the defendant physician *and* immediate past president of the defendant physician's professional society that adopted various standards of care and best practices.

    3)    **Plaintiff's 30(b)(6) notice re IT**

**Defendants**: Plaintiff's 30(b)(6) notice regarding "IT Systems" was drafted without the required "reasonable particularity"; topics were not specific to subject areas relevant to the claims in this case and has no discernible boundaries (e.g., "A description of Defendant's procedures, process,

IT compliance reports, and record for privileged access to any IT infrastructure including but not limited to operating systems and data bases that would not be captured in auditing processes."). Defendants plan to file a motion to quash/modify this improper notice as Defendants have yet to receive a properly modified notice from Plaintiff.

**Plaintiff:** Plaintiff described the matters in its 30(b)(6) notice Part I with reasonable particularity to address the stated areas of inquiry by stating, "*that would not be captured in auditing processes*" and agreed to delete the "*including but not limited to*" language during the Parties' meet and confer. A robust inquiry is necessary because Plaintiff can identify three areas regarding the electronic medical records that call into question the completeness of Defendants' discovery responses.

### 4) Plaintiff's intent to serve another 30(b)(6) notice regarding policies

**Plaintiff:** The Parties addressed this matter with the Court who incorporated the two-part 30(b)(6) approach into its scheduling order and the Rules provide that Plaintiff may inquire about matters beyond "the procedure at issue" as long as they are stated with reasonable particularity and relevant to the matters at issue in the case. Informed consent is an issue as is whether Erika's doctors presented her case to a multi-disciplinary tumor board and whether that was a policy of Defendant Memorial Sloan Kettering. A defendant should not be able to avoid a Rule 30(b)(6) deposition by claiming it has no knowledge of anything that may be relevant.

**Defendants**: Defendants' position is that a 30(b)(6) notice on the issues of polices for the above stated issues is wholly unnecessary as Plaintiff can ask questions about these matters when he deposes the defendant physician, as well as Dr. Kemeny another noticed physician at Defendant Memorial.

### 5) Defendants' request to limit depositions of damages witnesses to five

**Plaintiff:** Not every "damages witness" will only testify as to damages and Defendants' repeated attempts to limit the witnesses and the scope of their testimony is an unreasonable attempt to limit the evidence before it's developed in a serious and complex case. There are more than five witnesses who have valuable but different evidence of damages but not all of these witnesses are *only* damages witnesses. Moreover, different witnesses will testify as to the damages sustained by Plaintiff Scott Powers, his and Erika's minor child L.P., and Erika Zak herself. They include Erika's treating physicians, the Plaintiff, Erika's sister, her brother and sister-in-law who Defendants have already deposed because they accompanied Erika to several appointments with Defendants including the consultation at issue in this case, and friends of Plaintiff Scott Powers who have knowledge of his emotional damages and one to two of Erika's friends. Their credibility as non-party witnesses will be important for the jury to hear from, and for these reasons, the testimony is not cumulative. In any event, the Court can make that determination at trial, but should not limit the witnesses who may be deposed before their testimony is developed. However, Plaintiff is willing to limit the number of friends of Scott Powers or Erika Zak who will testify.

**Defendants**: Defendants' submit that they are trying to act in good faith with fairness to the parties and have asked Plaintiff's counsel to identify those persons most knowledgeable.

Defendants' position is that any additional damages witnesses would be cumulative and unnecessary.

### 6) Deadline for expert disclosures

**Defendants**: Plaintiff has served cursory disclosures under Rule 26(a)(2)(C) for treating providers setting forth areas of expert testimony he "hopes" to obtain. Defendants ask the Court to set a short deadline for Plaintiff to serve retained expert disclosures pursuant to Rule 26(a)(2)(B) as it may impact questioning of treating doctors.

**Plaintiff:** Defendants' insistence that Plaintiff serve disclosures for non-retained witnesses *before* they know what those witnesses may testify to is unreasonable and puts the cart before the horse. The Court contemplated that the treating physicians would offer expert testimony and did not impose a disclosure deadline prior to their depositions, since that would not be consistent with the Rules, yet Plaintiff nevertheless agreed to serve an *initial* Rule 26(b)(2)(C) disclosure to accommodate Defendants' request even though such disclosures were not required in advance of the witnesses' deposition.

### 7) Plaintiff's request to compel additional audit trails, metadata, and an inspection

**Plaintiff:** Plaintiff has a right under 45 CFR 164 *et seq* to inspect the audit trails and there is virtually no burden on Defendants for Plaintiff's EMR consultant to sit at a terminal in Memorial Sloan Kettering and review the native audit trails in the software. Defendant's resistance to this raises serious concerns about what Plaintiff may discover, particularly since according to Defendant, Erika Zak's medical records were never accessed between 2017 and the filing of this lawsuit.

**Defendants**: Defendants contend that Plaintiff's request for nearly three years of audit trails and metadata, beyond what was already produced, is not proportional to the claims in this case concerning one consent visit and one medical procedure. In addition, an on-site inspection to obtain materials Plaintiff is not entitled to is an unnecessary burden during the pandemic, and an extraordinary measure with significant privacy concerns.

The parties respectfully refer the Court to the parties' position letters. (Docs. 65 and 76).

### 8) Plaintiff's request to compel quality assurance materials asserted by Defendants to be privileged

Plaintiff mistakenly filed a letter-motion as a "letter" (Doc. 62) and Defendants had no option to file a response in opposition through ECF. In order to cure this issue, Plaintiff correctly filed a "letter-motion" this morning upon Defendants' agreement to file their response in opposition shortly thereafter.

**Plaintiff:** Plaintiff will rely on its pre-motion conference letter to advance its arguments regarding Defendants' waiver and/or improper assertion of the privilege.

**Defendants**: Defendants position is that under New York's medical peer review/quality assurance review privilege, the materials plaintiff seeks are privileged under N.Y. Pub. Health

Law and N.Y. Educ. Law. Plaintiff's counsel can confirm that the defendant physician did not make any statements before a peer review board or for a quality assurance evaluation at his deposition.

The parties respectfully refer the Court to the parties' position letters. (Docs. 78 and Doc. 79).

### 9) Interrogatories

**Plaintiff:** The Court's scheduling order specifically stated that the Parties should serve interrogatories in accordance with Fed. R. Civ. Pro. 33. Neither that Rule nor the Court's Order limited the interrogatories subject to L.R. 33.3 and the Defendants' reliance on that as the basis for objecting to virtually all of Plaintiff's interrogatories is gamesmanship, particularly after the extensive meet and confer and conference with the Court that set forth the written discovery schedule. Defendants' objections not only contradict their arguments to limit the number and scope of depositions, it has also delayed discovery in this case.

**Defendants**: The vast majority of plaintiff's interrogatories did not comply with Local Civil Rule 33.3 and sought substantive interrogatory responses (e.g., "detail what you advised Erika Zak re risks"). This was not ordered by the Court and plaintiff cannot now seek to compel responses because there are more practical methods of obtaining the information sought – i.e., depositions and expert disclosures. If the Court deems plaintiff is entitled to responses, Defendants should now be allowed to serve interrogatories on plaintiff regarding claims and contentions.

### 10) Audio recordings of the defendant physician and all other treating physicians

**Defendants**: Defendants have sought a representation from Plaintiff that he is not in possession of any other audio recordings of the defendant physician or any other treating physicians because multiple audio tapes have been produced at varying times by Plaintiff, most recently on the eve of depositions. Defendants contend that Plaintiff's statement below remains improperly vague.

**Plaintiff:** Plaintiff has disclosed and produced audio recordings that are relevant to the matters at issue as they have discovered and obtained them. Most were in the possession of non-party witnesses and Plaintiff was unaware of their existence. Plaintiff has and will continue to comply with the Rules of Civil Procedure in supplementing its Initial Disclosures and Defendants' discovery requests.

### 11) Plaintiff's request for Defendants to agree to authenticity of art, videos, photos, etc.

**Plaintiff:** Plaintiff produced all responsive photos, videos, and art in September. At the request of Defendants, Plaintiff then provided a listing of the dates taken (when known) and description of relevance on September 28, 2020. Plaintiff has requested Defendants agree to authenticity to avoid the need to prove them up in the absence of some question about their authenticity.

**Defendants**: Plaintiff produced hundreds of photos, videos and art. Defendants' counsel has been working around the clock on the demands imposed by this case. Defendants' counsel advised plaintiff's counsel that while we do not foresee an issue, this is more appropriately a trial evidentiary matter. Plaintiff's list totals 41 pages and Plaintiff is asking Defendants to agree to

Powers v. Memorial, et al.
Docket No.: 1:20-cv-02625
Page 5 of 5

the authenticity now. Defendants simply need time to review the materials and respond to Plaintiff's request.

### 12) Defendants request for pathology related authorizations

**Defendants**: In an effort to not delay expert discovery, Defendants ask plaintiff to provide authorizations to allow Defendants and their experts to inspect the original pathology slides and/or obtain re-cuts of the pathology specimens from the unfortunately fatal surgery on August 22, 2019 at Cleveland Clinic. Defendants also ask for an authorization to speak with the Cleveland Clinic pathologist. Defendants request these authorizations be provided within 10 days. Defendants have not interfered with Plaintiff's request to interview a non-party physician, and Plaintiff has no basis to refuse providing an authorization to speak with a relevant provider.

**Plaintiff:** Plaintiff will provide any proper authorization that is proportional to the needs of the case, but Defendants cannot in one breath simplify the case by characterizing it as "one procedure performed by one defendant physician" to justify limiting discovery, and in the next demand extensive medical, employment, and personal information from non-parties on the ground that it is proportional to the needs of the case. Defendants have interfered with Plaintiff's ability to interview at least one treating physician (Dr. DeMatteo) who was formerly employed by Defendant Sloan Kettering but is no longer. If their counsel wants to "speak" with one of Erika Zak's treating physicians, they can seek his or her deposition as they have required the Plaintiff to do. There is no basis to compel Plaintiff to provide an authorization that allows *ex parte* contact.

Respectfully submitted,

| **Hendler Flores Law, PLLC** | **Kaufman Borgeest Ryan LLP** |
|---|---|
| */s/ Scott Hendler* | */s/ Betsy D. Baydala* |
| Scott Hendler | Betsy D. Baydala |
| Counsel for Plaintiff | Counsel for Defendants |