UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
SCOTT POWERS,                                               :
                                        Plaintiff,          :
                                                            :            20 Civ. 2625 (LGS)
                    -against-                                :
                                                            :            **OPINION AND ORDER**
MEMORIAL SLOAN KETTERING CANCER                             :
CENTER, et al.,                                             :
                                        Defendants.         :
                                                            :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

        Plaintiff Scott Powers brings this diversity action individually, as representative of the

estate of Erika Zak, and as the natural guardian of L.P., a minor, alleging medical malpractice,

lack of informed consent and wrongful death claims under New York law.  Plaintiff alleges that

these claims arise out of an April 10, 2017, ablation procedure performed on his late wife, Erika

Zak, by Defendant Dr. Constantinos Sofocleous while Ms. Zak was a patient of Defendant

Memorial Sloan Kettering Cancer Center ("MSK").  Defendants move for summary judgment on

all claims.  Plaintiff moves to exclude one of Defendants' experts, Dr. Neil Theise.  For the

reasons discussed below, Defendants' motion for summary judgment is denied, and Plaintiff's

motion to exclude is denied.

I.      **BACKGROUND**

        The background facts below are drawn from the parties' Rule 56.1 statements and other

submissions on these motions.  The facts are either undisputed or based on evidence in the record

drawing all reasonable inferences in favor Plaintiff, as the non-moving party.  *See N.Y. State

Teamsters Conf. Pension & Ret. Fund v. C & S Wholesale Grocers, Inc.*, 24 F.4th 163, 170 (2d

Cir. 2022).

Erika Zak was undergoing treatment at MSK after being diagnosed with advanced metastatic colon cancer in April 2014.  On March 22, 2017, three years into her treatment, Ms. Zak met with her oncologist Dr. Nancy Kemeny who informed Ms. Zak that her scans detected two lesions on her liver.  The same day, Dr. Kemeny referred Ms. Zak to Dr. Sofocleous to evaluate whether liver-directed therapy by ablation was feasible.  Chloe Metz, Ms. Zak's sister-in-law, accompanied her to both appointments and recorded the appointments on her phone so that Plaintiff could hear what each doctor advised.  Dr. Sofocleous did not discuss any alternatives with Ms. Zak and said that he believed that ablation offered Ms. Zak the best chance of complete tumor eradication.  Plaintiff's Interventional Radiology expert, Dr. Rakesh Navuluri, testified that, "in this particular case, looking at the location of the tumor and the decision to ablate it, I think in terms of poor judgment on the scale of 1 to 10, I would say it's a 9.  9 out of 10 in terms of being poor, with 10 being poor judgment and 1 being perfect judgment."

On April 10, 2017, Dr. Sofocleous performed PET/CT-guided percutaneous microwave ablations of Ms. Zak's two liver lesions.  Dr. Sofocleous documented a summary of the total time ablated for each lesion as 20 minutes with the energy ranging from 40-60 Watts.  At the end of the ablation, Dr. Sofocleous performed a PET scan and he noted "significant edema compromising the main and left portal vein with diminished flow in particular to the left liver segments 4 and 2."  Ms. Zak met and spoke with Dr. Sofocleous immediately following the ablation; Dr. Sofocleous told Ms. Zak that he got the tumors, but there was some damage and reduced blood flow that needed to be monitored.

The parties disagree on the scope of the damage caused during the ablation procedure and whether it ultimately led to Ms. Zak's developing liver failure.  Dr. Manan Shah, Plaintiff's gastroenterologist and hepatologist expert, summarized the damage from the ablation as:

significant and irreversible injury to the liver as a result of the ablation.  Her procedure was complicated by new portal vein thrombosis as seen on an ultrasound on April 12, 2017.  She had a significant and larger-than-anticipated parenchymal liver injury on post-procedural CT scan with a 9 x 13 cm area of hypoperfusion post-RFA.  She suffered a bile leak and infected biloma requiring drain placement.  An arteriogram on April 13, 2017, showed multifocal hepatic artery strictures that were not seen on prior imaging.

Dr. Ronald DeMatteo, one of Ms. Zak's treating physicians and Plaintiff's expert, described the damage as "catastrophic," "the worst complication [he] ha[s] ever seen from any thermal ablation or heard about ever" and "on a scale unlike no other."  Defendants' expert Dr. Goldberg described the damage as "[a] much larger area of tissue destruction was created than would have been expected in the normal case," calling it "the largest that I've seen over thousands of ablations, both experimentally and clinically."  Plaintiff's expert diagnostic radiologist Dr. Coakley stated:

> Immediately after the ablation procedure, a large 'death zone' of non-enhancing necrotic tissue is evident in the central liver, measuring up to 13 cm [or 130 mm, in diameter].  This is a huge volume of dead liver tissue, and the necrotic tissue encompasses the porta hepatis.  This is shown on a contrast-enhanced CT performed 4/10/2017 immediately after the ablation.

Over several months, Ms. Zak's condition continued to deteriorate.  In December 2017, Dr. Kemeny told Ms. Zak that Cleveland Clinic was beginning to do liver transplants on patients, including -- as relevant to Ms. Zak -- patients with biliary sclerosis from pump treatment.  In December 2017, Ms. Zak was evaluated at Cleveland Clinic for an experimental liver transplant protocol for patients with metastatic colon cancer to only the liver.  Cleveland Clinic approved Ms. Zak for the liver transplant list on February 1, 2018; she moved to Cleveland Clinic in June 2018.  On August 22, 2019, a donor liver became available for Ms. Zak and she was taken to transplant surgery, but she died during surgery.  This action followed.

II.     **DISCUSSION**

    A.     **Summary Judgment**

Defendants contend that Plaintiff's medical malpractice, wrongful death and lack of informed consent claims cannot survive summary judgment because (1) Dr. Sofocleous's decision to perform, and the performance of, the liver ablation on Ms. Zak did not depart from the standard of care; (2) there is no causal nexus between the ablation and Ms. Zak's liver failure and death and (3) no reasonably prudent person in Ms. Zak's circumstances, if fully informed, would have refused the ablation.  Defendants' arguments fail because Plaintiff has met his summary judgment burden by identifying evidence from which a reasonable jury could reach a Plaintiff's verdict on all three counts.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

    1.     **Summary Judgment Legal Standard**

Summary judgment is appropriate where the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  There is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Liberty Lobby, Inc.*, 477 U.S. at 248; *accord Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Liberty Lobby, Inc.*, 477 U.S. at 248; *accord Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 148 (2d Cir. 2017).

In evaluating a motion for summary judgment, a court must "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences and resolv[e] all ambiguities in its favor."  *Wagner v. Chiari & Ilecki, LLP*, 973 F.3d 154, 164 (2d

Cir. 2020).  When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing to particular parts of materials in the record.  Fed. R. Civ. P. 56(c)(1)(A).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019).

### 2.     Medical Malpractice Claim

To establish a claim for medical malpractice under New York law, a plaintiff must prove "(1) a deviation or departure from accepted medical practice, and (2) evidence that such departure was a proximate cause of injury."  *Gilmore v. Mihail*, 105 N.Y.S.3d 504, 506 (2d Dep't 2019); *accord Arkin v. Gittleson*, 32 F.3d 658, 664 (2d Cir. 1994) (same).  On a motion for summary judgment, a defendant in a medical malpractice action must make a prima facie showing that "in treating the plaintiff, he or she did not depart from good and accepted medical practice, or that any such departure was not a proximate cause of the plaintiff's alleged injuries." *Anyie B. v. Bronx Lebanon Hosp.*, 5 N.Y.S.3d 92, 93 (1st Dep't 2015).  Where a defendant makes a prima facie showing on both elements, "the burden shifts to the plaintiff to rebut the defendant's showing by raising a triable issue of fact as to both the departure element and the causation element."  *Gilmore*, 105 N.Y.S.3d at 506.  "Generally, 'the opinion of a qualified expert that a plaintiff's injuries were caused by a deviation from relevant industry standards would preclude a grant of summary judgment in favor of the defendants.'"  *Anyie B.*, 5 N.Y.S.3d at 93 (quoting *Diaz v. New York Downtown Hosp.,* 784 N.E.2d 68, 70 (N.Y. 2002)); *Gilmore*, 105 N.Y.S.3d at 506 ("Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions.").

Defendants contend that their care and treatment of Ms. Zak in March and April 2017 fully conformed with the standards of care because (1) presenting Ms. Zak's case to an multidisciplinary tumor board ("MDTB") was not mandatory; (2) no appropriate or feasible alternative existed to ablation; (3) Dr. Sofocleous' decision to proceed with ablation was within the standard of care and (4) Dr. Sofocleous performed the ablation in accordance with the standards of care.  Even assuming that Defendants have put forth a prima facie showing with respect to these arguments, Plaintiff's medical malpractice claim survives summary judgment because Plaintiff has submitted expert evidence to support a finding that Ms. Zak's injuries "were caused by a deviation from relevant industry standards."  *See Anyie B.*, 5 N.Y.S.3d at 93.

Plaintiff proffered evidence that Dr. Sofocleous violated the standard of care by proceeding with the ablation.  Specifically, Dr. DeMatteo, one of Plaintiff's experts and Ms. Zak's treating physician in the spring of 2017, testified that thermal ablation was unsafe because Ms. Zak's central tumor was located less than four millimeters away from the hilum. Dr. DeMatteo testified that he did not agree with the performance of ablation for the central tumor because it was "very close to the confluence of the portal vein, bile duct and hepatic artery."  Dr. DeMatteo testified that the risk associated with Ms. Zak's ablation procedure was "extremely high, greater than 8 or 9" on a scale of one to ten, and that it was "a poor decision" to proceed with the ablation procedure.  Dr. Navuluri, Plaintiff's interventional radiology expert, testified that that while ablation generally is a tool within the standard of care available to interventional radiologists to treat a liver tumor, it was not "an appropriate thing to do" given the location of Ms. Zak's central tumor.  Dr. Navuluri testified that Dr. Sofocleous's decision to ablate Erika's central liver tumor under these circumstances was inappropriate and reflected poor

judgment -- rating the decision a "9 out of 10 in terms of being poor, with 10 being poor judgment."

In addition, Plaintiff proffered evidence that Dr. Sofocleous failed to adhere to the standard of care in performing the ablation.  That evidence showed that Dr. Sofocleous applied more energy and for longer periods of time than the manufacturer recommended and than Dr. Sofocleous entered in Ms. Zak's chart.  Dr. Navuluri testified that the use of two probes for "longer than typical ablation times" and at "higher than usual ablation energies" resulted in a larger ablation zone, destroying over 2.6 times more liver tissue than necessary.  Dr. Daniel Cousins, Plaintiff's diagnostic radiologist, stated in his report that Dr. Sofocleous's probe placement during the ablation procedure was "essentially contiguous with the critical structures," and states that "within a reasonable degree of medical probability, there was significant injury to the liver and its associated important structures living within the hepatic hilum (porta hepatis) on an imaging basis as a result of the hepatic ablation that was performed by Dr. Constantinos Sofocleous."

Defendants concede that the April 10, 2017, ablation resulted in a "severe bile duct injury," but argue that Ms. Zak's injuries were outside of Dr. Sofocleous's control and do not indicate that he departed from the standard of care.  But that argument fails to consider Plaintiff's contrary evidence from which a reasonable jury could reach a verdict in Plaintiff's favor.  *See Liberty Lobby, Inc.*, 477 U.S. at 248.  For example, Dr. Navuluri testified that the outcome of the ablation was "catastrophic" and that he had "never seen an ablation with this degree of damage to the liver before."  In an email chain among what appear to be other doctors at Defendant MSK, on April 13, 2017, Dr. Kemeny wrote "I just looked at this scan it looks like she is going to die what is going on."  The next day, in a separate chain, Dr. Kemeny explained that "[Ms.]

Zak was in good shape [b]efore ablation.  She took a big hit and scan looks terrible."  Another email from Dr. Skye Mayo (Oregon Health & Science University) to Dr. Kemeny on September 22, 2017, states that Ms. Zak was jaundiced "because her bile ducts were completely blown apart from the [ablation] at the confluence of the right and left hepatic ducts effectively detaching them from her common bile duct.  This is her main problem and the greatest danger to her life." Plaintiff's proffered evidence creates a genuine issue of material fact as to whether Dr. Sofocleous used reasonable care, diligence, or skill in performing the ablation procedure.

### 3.  Wrongful Death Claim

Under New York law, a decedent's personal representative may "recover damages for a wrongful act, neglect or default which caused the decedent's death against a person who would have been liable to the decedent by reason of such wrongful conduct if death had not ensued." N.Y. Est. Powers & Trusts § 5-4.1(1).  "[T]o recover damages for wrongful death, a plaintiff must prove:  (1) the death of a human being; (2) a wrongful act, neglect or default of the defendant that caused the decedent's death; (3) the survival of distributees who suffered pecuniary loss by reason of the decedent's death; and (4) the appointment of a personal representative of the decedent."  *Phillips v. City of Middletown*, No. 17 Civ. 5307, 2018 WL 4572971, at *11 (S.D.N.Y. Sept. 24, 2018) (applying New York law); *accord McManus v. Lipton*, 967 N.Y.S.2d 691, 692 (1st Dep't 2013) (affirming denial of summary judgment where plaintiff's expert asserted that a timely CT scan would have detected early-stage lung cancer).

Defendants argue that summary judgment should be granted in their favor because Plaintiff has not established the second element -- that Defendants caused Ms. Zak's death. Defendants assert that Ms. Zak's liver failure was caused by multiple factors, including prior surgeries that decreased the volume of her liver, HAI pump therapy and various chemotherapies.

But, as explained above, Plaintiff has put forth sufficient evidence to create a genuine issue of material fact as to whether the injury Ms. Zak sustained during the ablation procedure ultimately caused her death.

For example, Dr. DeMatteo assessed the before and after imaging of Ms. Zak's liver following the ablation in April 2017, and concluded that the ablation damaged Ms. Zak's portal vein, hepatic artery, and common biliary duct.  Dr. DeMatteo described the resulting damage as "catastrophic" and specifically concluded that the ablation "was the most substantial factor that caused the cascade of damage to her liver that caused her liver dysfunction" and commented that he was "amazed that she survived the acute event of the ablation and associated damage, and then lived as long as she did after the ablation."  A second expert, Dr. Navuluri, described the result of the ablation as "a catastrophic outcome.  I have never seen an ablation with this degree of damage to the liver before.  Quite shocking, actually."  This evidence is sufficient for a reasonable jury to conclude that the damage caused by the ablation was a substantial factor in Plaintiff's death.  *See Gaspard v. Aronoff*, 61 N.Y.S.3d 240, 243 (2d Dep't 2017) ("Establishing proximate cause in medical malpractice cases requires a plaintiff to present sufficient medical evidence from which a reasonable person might conclude that it was more probable than not that the defendant's departure was a substantial factor in causing the plaintiff's injury.").

### 4.    Lack of Informed Consent Claim

"To establish a cause of action to recover damages based on lack of informed consent, a plaintiff must prove:  (1) that the person providing the professional treatment failed to disclose alternatives thereto and failed to inform the patient of reasonably foreseeable risks associated with the treatment, and the alternatives, that a reasonable medical practitioner would have disclosed in the same circumstances, (2) that a reasonably prudent patient in the same position

would not have undergone the treatment if he or she had been fully informed, and (3) that the lack of informed consent is a proximate cause of the injury." *Alessi v. Mucciolo*, 67 N.Y.S.3d 270, 271 (2d Dep't 2017) (internal quotation marks omitted).  Where the parties present "divergent expert testimony, it [is] the province of the jury to determine the credibility of the experts." *Id.*

Defendants argue that summary judgment is appropriate because Dr. Sofocleous informed Ms. Zak of the common risks of ablation (bleeding and infection), and the specific risk of injury to the bile duct given the lesion at issue being near the left bile duct.  But Plaintiff has proffered evidence from which a reasonable jury could find that Dr. Sofocleous did not discuss the relevant risks of ablation.  Ms. Metz, Ms. Zak's sister-in-law, testified that outside of about "ten minutes" when Dr. Sofocleous examined Ms. Zak, Ms. Metz recorded the entirety of the twelve-minute consultation with Dr. Sofocleous.  Ms. Metz testified that "[t]here were no substantive discussions about the procedure or risks or what [Ms. Zak] might be feeling" outside of the recording.  The recording itself includes a total of three seconds on risks, including a brief mention of "risks:  bleeding, infection, injury to bile duct" without further explanation.  This disclosure fails to conform to the legal standard for adequate informed consent under New York law and raises a genuine issue of material fact regarding whether Ms. Zak gave "informed" consent to proceed with the ablation, particularly given other testimony about the location of the central tumor.  Accordingly, Defendants' motion is denied as to Plaintiff's informed consent claim.

### 5.    Damages

Defendants seek summary judgment as to Plaintiff's damages theories on four grounds: (1) certain damages are unrecoverable under New York law; (2) Plaintiff has not submitted

sufficient evidence of Ms. Zak's past and future earnings; (3) Plaintiff has not submitted

sufficient evidence of loss of household services and (4) Plaintiff has not submitted sufficient

evidence of funeral expenses.

Plaintiff may recover loss of consortium damages for the medical malpractice and lack of

informed consent claims, which Plaintiff brings as representative of Ms. Zak's estate.  Loss of

consortium "is designed to compensate for the injury to th[e marital] relationship and the interest

of the injured party's spouse in the continuance of a healthy and happy marital life." *Grunwald*

*v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, No. 18 Civ. 3208, 2020 WL 2192683, at *4

(S.D.N.Y. May 6, 2020) (alteration in original) (internal quotation marks omitted) (applying

New York law and quoting *Rangolan v. Nassau*, 370 F.3d 239, 248 (2d Cir. 2004)).  Loss of

consortium claims are "derivative of the impaired spouse's negligence action to the extent that

the tortfeasor's liability to the impaired spouse must be established first and foremost." *Id*.

Plaintiff also may recover damages for the wrongful death claim.  New York law

governing the amount of recovery in wrongful death cases provides:

> The damages awarded to the plaintiff may be such sum as the jury or, where
> issues of fact are tried without a jury, the court or referee deems to be fair and just
> compensation for the pecuniary injuries resulting from the decedent's death to the
> persons for whose benefit the action is brought.  In every such action, in addition
> to any other lawful element of recoverable damages, the reasonable expenses of
> medical aid, nursing and attention incident to the injury causing death and the
> reasonable funeral expenses of the decedent paid by the distributees, or for the
> payment of which any distributee is responsible, shall also be proper elements of
> damage.  Interest upon the principal sum recovered by the plaintiff from the date
> of the decedent's death shall be added to and be a part of the total sum awarded.

N.Y. Est. Powers & Trusts Law § 5-4.3.  The New York Court of Appeals has made clear that

the statute permits recovery for "[l]oss of support, voluntary assistance and possible inheritance,

as well as medical and funeral expenses incidental to death." *Gonzalez v. New York City Hous.*

*Auth.*, 572 N.E.2d 598, 601 (N.Y. 1991).  "In the case of a decedent who was not a wage earner,

pecuniary injuries may be calculated, in part, from the increased expenditures required to continue the services she provided, as well as the compensable losses of a personal nature, such as loss of guidance." *Id* (internal quotation marks omitted).

Defendants' remaining arguments are without merit. Based on the evidence, a reasonable jury could find that, if Ms. Zak's liver had not sustained damage from the April 10, 2017, ablation, she could have returned to her normal life, including work. One of Plaintiff's damages experts, Dr. Smith, calculated annual lost wages assuming Ms. Zak "continue[d] to earn" at her 2013 rate and showed losses for "each and every year in the future for as many years as the trier of fact would like to account for it." Plaintiff also has proffered evidence that Ms. Zak handled most of the household work, such as cleaning, laundry, cooking and gardening as well as evidence regarding the amount of funeral expenses incurred. This evidence creates a material dispute of fact from which a reasonable jury may award these damages. Accordingly, Defendants' motion for summary judgment on damages is denied.[1]

**B.      Motion to Exclude Dr. Theise**

Plaintiff moves to exclude Dr. Theise's opinions because (1) Defendants refused to produce the material he relied upon despite timely discovery requests and (2) Dr. Theise's opinions are unreliable. Plaintiff's motion is denied because Defendants timely produced the materials on which Dr. Theise relied, and Dr. Theise's opinions are not unreliable.

---

[1] Defendants argue that the Complaint "insinuates a cause of action sounding in negligent hiring and supervision," which should be dismissed. Defendants also assert that "Plaintiff's allegations of potential spoliation asserted as a possible claim during discovery must fail." Because the Complaint does not assert either claim, the Court does not address this aspect of Defendants' motion.

### 1.    Production of Pathology Reports

Plaintiff moves to exclude Dr. Theise's opinions because "Defendants' failure to timely produce the requested [pathology slides] . . . operated to inhibit Plaintiff from timely designating their rebuttal expert pathologist."  This argument is unpersuasive and is in substance a second motion to reconsider the Court's ruling granting the motion to strike the expert opinion of Plaintiff's proposed expert, Dr. Carlos Torres.  Dr. Torres's proposed rebuttal expert report -- first served June 21, 2021, two months after the close of all discovery on April 25, 2021 -- was stricken because "Plaintiff has shown a complete lack of diligence and has not provided a persuasive explanation for his failure to comply with the Court's expert disclosure and discovery deadlines."

The Court specifically considered "Plaintiff's purported reason for delay" -- Defendants' alleged delay in producing the pathology slides -- in both the July 15, 2021, oral ruling granting Defendants' motion to strike and the Court's August 9, 2021, Order denying Plaintiff's motion for reconsideration and found that Defendants' conduct was not a sound basis for Plaintiff's delay.  The Court also found that excluding Dr. Torres would not prejudice Plaintiff because Plaintiff proffered other evidence that the April 10, 2017, ablation procedure caused Ms. Zak's liver failure.  At the July 15, 2021, hearing, Plaintiff stated his intention to rely on Dr. Mayo, "a treater who was the vice chair of surgery at [MSK] . . .  and testified very clearly to that . . . and we have an intervention radiologist who testified to that effect."

The Court reiterated this reasoning in the August 9, 2021, written Order on Plaintiff's motion for reconsideration, stating:

> First, both sets of slides [the MSK Slides and the Cleveland Clinic Slides] were made available to Plaintiff before the close of discovery. The Cleveland Clinic Slides -- the slides on which [Plaintiff's expert] Dr. Torres ultimately based his expert report -- were produced to Plaintiff on March 25, 2021.  On April 6,

2021, Defendants offered Plaintiff the opportunity to inspect the MSK slides on-site at [MSK], and Plaintiff declined to do so.  Second, Plaintiff did not seek an extension of the time to disclose a rebuttal expert or complete expert discovery, nor did Plaintiff ever seek to compel the production of any slides. Plaintiff also did not raise the issue of an additional expert during the May 13, 2021, [summary judgment] pre-motion conference before the Court.

At the time [Defendants' motion to strike Dr. Torres opinion] was granted, the Court was aware that Plaintiff intended to rely upon the expert opinion of Dr. Torres to rebut the opinion of Defendants' expert, Dr. Neil Theise, who will opine on the cause of Ms. Zak's death.  Plaintiff was made aware of Dr. Theise's potential testimony when his expert report was produced on November 30, 2020, and Plaintiff had ample opportunity to formulate a response to Dr. Theise's expert opinions [or at least seek an extension] before the discovery deadline in April 2021, and before Plaintiff's untimely expert disclosure of Dr. Torres in June 2021.

For the same reasons, Plaintiff's motion to exclude Dr. Theise's testimony pursuant to Rule 37 is denied.

### 2.  Rule 702 Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony.  The rule provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if[ ] (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702(a).  District Courts play a "gatekeeping" function under Rule 702 and "are charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'"  *In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig. (No. II)*, 982 F.3d 113, 122-23 (2d Cir. 2020) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)); *accord In re Aluminum Warehousing Antitrust Litig.*, No. 13 MD 2481, 2020 WL 4218329, at *27 (S.D.N.Y. July 23, 2020).  A Rule 702 inquiry focuses on three issues:

(1) whether a witness is "qualified as an expert," (2) whether the witness's "opinion is based upon reliable data and methodology" and (3) whether "the expert's testimony (as to a particular matter) will assist the trier of fact." *Nimely v. City of N.Y.*, 414 F.3d 381, 397 (2d Cir. 2005) (internal quotation marks and citations omitted); *accord In re Namenda Indirect Purchaser Antitrust Litig.*, No. 15 Civ. 6549, 2021 WL 509988, at *6 (S.D.N.Y. Feb. 11, 2021).  "[A] slight modification of an otherwise reliable method will not render an expert's opinion *per se* inadmissible." *United States v. Jones*, 965 F.3d 149, 160 (2d Cir. 2020).  The party proffering the expert bears the burden of establishing Rule 702's admissibility requirements by a preponderance of the evidence.  *Jones*, 965 F.3d at 161.

### 3.     Rule 702 Analysis

Plaintiff argues that Dr. Theise's report is unreliable because his opinion that intrahepatic Floxuridine ("FUDR/HAI") caused Ms. Zak's small bile duct loss and bile duct injury is not supported by medical literature.  This argument fails.  It is well established that there is no requirement that a medical expert support his opinions with medical literature.  *Daubert*, 509 U.S. at 593-94 ("Publication (which is but one element of peer review) is not a *sine qua non* of admissibility; it does not necessarily correlate with reliability, and in some instances well-grounded but innovative theories will not have been published." (internal citation omitted)).  "Where an expert otherwise reliably utilizes scientific methods to reach a conclusion, lack of textual support may go to the weight, not the admissibility of the expert's testimony." *In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig. (No. II)*, 982 F.3d at 124 (quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002)).

In addition to his experience, Dr. Theise testified that he reviewed textbooks and journal articles in forming his opinion and cited the materials on which he relied.  Plaintiff argues that

"[t]he articles cited by Dr. Theise are obsolete because they are between twenty to forty years old, before addition of dexamethasone lowered the rates of biliary toxicity from 30% to 9%." But those materials did not form the sole basis for Dr. Theise's opinion.  Dr. Theise testified that he could "demonstrate that [Ms. Zak] had rising alkaline phosphatase indicating chronic duct injury for months prior to the ablation" and that "when you put all the pathologic changes together with all of the clinical information, that's the only possibility that explains . . . all of this patient's findings."  To the extent that Plaintiff raises methodological concerns about Dr. Theise's report, those concerns go to weight and not admissibility.  *See, e.g.*, *Restivo v. Hessemann*, 846 F.3d 547, 577 (2d Cir. 2017) ("Frequently, though, 'gaps or inconsistencies in the reasoning leading to the expert's opinion . . . go to the weight of the evidence, not to its admissibility.'" (alteration omitted)); *see also In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 178-79 (S.D.N.Y. 2018).  Plaintiff's motion to exclude Dr. Theise is denied.

## III.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is denied, and Plaintiff's motion to exclude Dr. Theise is denied.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 228 and 234. A trial scheduling order will follow.

Dated:  March 22, 2022
          New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

16