**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **Scott Powers, individually, as Representative of the Estate of Erika Zak, and as the natural guardian of L.P., a minor,** | § | |
| **Plaintiff.** | § | **CIVIL ACTION NO. 1:20-cv-02625** |
| **v.** | § | |
| **Constantinos Sofocleous and Memorial Sloan Kettering Cancer Center,** | § | |
| **Defendants.** | § | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NUMBER 5 TO EXCLUDE DR. DEMATTEO'S AND DR. NAVULURI'S OPINONS**

COMES NOW Plaintiff and respectfully moves this Honorable Court to deny Defendants' motion in limine (MIL) number 5 to preclude the expert testimony of Drs. DeMatteo and Navuluri. In opposition to Defendants' motion, Plaintiff states as follows:

## Argument

Defendants claim in one MIL that Dr. DeMatteo's expertise and basis for opinions is so different from that of an interventional radiologist that he must be excluded (Dkt. No. 275). In a separate MIL, Defendants claim that Dr. DeMatteo's opinions are so similar to those of interventional radiologist, Dr. Rakesh Navuluri, that the opinions must be excluded. In actuality, the testimony of Drs. DeMatteo and Navuluri do not substantively overlap. Whenever they do, it is because they offer different perspectives from the same universe of facts. This is not impermissibly cumulative, and necessary for the jury to understand the expert testimony at trial.

In *Merck Eprova Ag v. Gnosis S.P.A*, the expert witnesses reached the same conclusion using different kinds of analysis. 2011 U.S. Dist. LEXIS 157476 at *6, 2011 WL 10818492

(S.D.N.Y. June 8, 2011). The Court held that the experts' testimony was different enough to not be unduly burdensome. *Id.*

Drs. Navuluri and DeMatteo testify to different aspects of the broad categories complained of by Defendants. Specifically:

**A. Location of the lesion at issue.**

The experts opined on the same measurement. This measurement is at the heart of Plaintiff's claim that the ablation was too dangerous to attempt. The experts naturally provide slightly different measurements. When referring to radiological measurements, Dr. DeMatteo explains that "different people could be off by a millimeter or so." *See* **Exhibit A**, Dr. DeMatteo's report, p. 7. The experts both relied on this fact but formed independent opinions. That the two doctors relied on the same measurement to underpin their opinions is in no way "excessively cumulative and potentially prejudicial under Fed. R. Evid. 402." *See Colbourne v. United States*, No. 16-CV-5606 (SN), 2019 U.S. Dist. LEXIS 128828 at *11–12, 2019 WL 3491469 (S.D.N.Y. Aug. 1, 2019).

**B. The decision to ablate.**

Dr. Sofocleous committed medical negligence in his decision to proceed with the ablation procedure. This is Dr. DeMatteo's primary expert opinion in this case. Dr. DeMatteo concludes that the decision to ablate Erika Zak in March 2017 was "poor." He describes the decision to ablate as higher than an 8 or a 9 on a 10-point scale where 10 is the poorest judgment imaginable. **Exhibit C**, Deposition of Dr. DeMatteo (Tr. 109:22–110:25 and errata at pg. 110:8). Dr. DeMatteo testified that the ablation should have never been attempted and that it was extremely risky given how close the tumor was to the liver's vital structures. **Exhibit C** (Tr. 87:2–21, 110:1–25, and errata at pg. 110:8). He also testified that the decision to proceed with the ablation at all was a deviation from

the standard of care because there was "***no way to perform the procedure safely***." *Id.* at (Tr. 131:9–16) (emphasis added). Dr. DeMatteo, as Erika's treating physician when this occurred, is in a unique and superior position to opine on the decision to ablate at Memorial Sloan Kettering in March 2017. He is also qualified to testify about the options available to Erika Zak that Drs. Sofocleous and Kemeny failed to consider. **Exhibit A**, p. 9–10.

Dr. Navuluri's opinion as an interventional radiologist only supports Dr. DeMatteo's opinion to this claim—confirming that while ablation is generally a tool within the standard of care available to interventional radiologists, Dr. Sofocleous's decision to ablate Erika's central tumor was inappropriate. **Exhibit D**, Deposition of Dr. Navuluri (Tr. 190:5:25, 188:5–11).

**C. Multidisciplinary tumor boards.**

Drs. Navuluri and DeMatteo do not offer the same opinions of multidisciplinary tumor boards ("MDTB"). Their opinions, rather, are complimentary. Dr. Navuluri stated that Drs. Sofocleous and Kemeny should have presented Erika Zak's situation to an MDTB before deciding to ablate Erika Zak's new tumors in March 2017. *See* **Exhibit B**, Dr. Navuluri's Report, p. 12. Dr. DeMatteo, does not offer an opinion on the failure of Drs. Sofocleous and Kemeny to bring Erika's case to a MDTB. Instead, he merely described the practical value of presenting Erika's case to a MDTB as her treating physician in March 2017—to confirm the location of the lesion. **Exhibit A**, p.10. Dr. DeMatteo testified that if he had been consulted before the ablation, as would have occurred had a MDTB taken place, "the procedure wouldn't have happened." **Exhibit C**, (Tr. 107:14–20). This is in complement to Dr. DeMatteo's opinion, not duplicative.

**D. Dr. Sofocleous's consent of Erika Zak.**

One component of lack of informed consent is the alternatives that reasonable physicians would have discussed with the patient. N.Y. PUB. HEALTH LAW § 2805-d[1]. Cancer is a

multidisciplinary disease, and Drs. Navuluri and DeMatteo approach what risks and alternatives should have been discussed with Erika from different disciplines and thus have different opinions. For example, Dr. DeMatteo, as Erika's surgeon, elaborates on what factors should have been considered for Erika for a surgical consult in March 2017, including other chemotherapy options and focal radiation. **Exhibit A**, p. 9–10. He also opines that the NanoKnife (Irreversible Electroporation) should have been considered an alternative because it is used when thermal ablation is contraindicated because tumors are within 1 cm of the hilum, such as the case for Erika. *Id.* He also provides his opinion that radioembolization would have been an alternative that should have been recommended to Erika: "In my opinion, radioembolization would have also been associated with a lower risk. It is highly likely that she would not have had this kind of injury with radioembolization." *Id.*

Dr. Navuluri provides different alternatives that should have been considered for Erika, coming from an interventional radiology perspective. He would have avoided ablation and attempted radiation segmentectomy in this particular case given the "deep and central location of the lesions." **Exhibit B**, p. 16–17. He also would have consulted a radiation oncologist about external beam radiation. *Id.*

**E. The performance of the ablation.**

While Dr. DeMatteo explains what factors an operator must employ in determining the time, wattage, and probes to use in an ablation, it is ***only*** in connection with his opinion that Dr. Sofocleous should have considered these factors before deciding to ablate a tumor that is "3–4 mm distance to the bile duct and portal vein." **Exhibit A**, p. 11–12. This is Dr. DeMatteo's opinion on the decision to ablate, a separate and distinct basis for medical negligence than Dr. Sofocleous's performance of the ablation as discussed above.

Only Dr. Navuluri discusses Dr. Sofocleous's negligent performance of the ablation procedure itself. **Exhibit B**, p. 17, **Exhibit D**, (Tr. 152:15–23).

**F. Injuries related to the ablation.**

Defendants only argument that the testimony of Drs. Navuluri and DeMatteo are impermissibly cumulative on this point is that they both refer to the damage Dr. Sofocleous inflicted upon Erika Zak as "catastrophic." That the experts used the same adjective may be prejudicial to the Defendants, but it is relevant, highly probative, and *fairly* prejudicial. Drs. Navuluri and DeMatteo have different opinions on this subject. Dr. DeMatteo reviews Erika's progress into liver failure from the perspective of her treating physician who treated her in the immediate aftermath and as a surgeon. *See* **Exhibit A**. Dr. Navuluri's opinions on the ablation are from a radiological perspective and he opines on her eventual clinical course through that lens. *See* **Exhibit B**. Dr. Navuluri provides specific opinions on the nature of Erika's injury and her descent into liver failure requiring a liver transplant, aspects that are not present in Dr. DeMatteo's report.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court deny Defendants' MIL number 5 to preclude the expert testimony of Drs. DeMatteo and Navuluri, and for whatever other further relief this Court deems just and proper.

Respectfully submitted,

HENDLER FLORES LAW, PLLC

**By:** ______________________

Scott M. Hendler
shendler@hendlerlaw.com
Laura A. Goettsche
lgoettsche@hendlerlaw.com
901 S. MoPac Expressway
Bldg. 1, Suite #300
Austin, Texas 78746
Tel: (512) 439-3200

Fax: (512) 439-3201
**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 24, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record for Defendants.

Scott M. Hendler