IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Scott Powers, individually, as Representative of the Estate of Erika Zak, and as the natural guardian of L.P., a minor,**<br><br>  **Plaintiff.**<br><br>  v.<br><br>**Constantinos Sofocleous and Memorial Sloan Kettering Cancer Center,**<br><br>  **Defendants.** | **CIVIL ACTION NO.**<br>**1:20-cv-02625** |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NUMBER 6 TO EXCLUDE STAN SMITH'S OPINIONS

COMES NOW Plaintiff and respectfully moves this Honorable Court to deny Defendants' motion in limine (MIL) number 6 to preclude the expert testimony of Stan Smith. In support of its opposition, Plaintiff states as follows:

### Argument

Defendants reiterate their summary judgment argument, misstating the testimony of Stan Smith. Dkt. No. 248. In denying their motion, this Court stated:

> Based on the evidence, a reasonable jury could find that, if Ms. Zak's liver had not sustained damage from the April 10, 2017, ablation, she could have returned to her normal life, including work. One of Plaintiff's damages experts, Dr. Smith, calculated annual lost wages assuming Ms. Zak "continue[d] to earn" at her 2013 rate and showed losses for "each and every year in the future for as many years as the trier of fact would like to account for it."

*Id.* As this Court has already distinguished, Stan Smith did not opine that Erika Zak would live and work for any definite number of years. He merely provided a calculation to help the jury determine the amount of earnings for each year the jury determines appropriate given the evidence.

Defendants claim that this is improper because they hyperbolically claim it would be "so unrealistic and contradictory as to suggest bad faith" to assume that she would have ever worked a day in her life had she not been injured by the April 10, 2017 ablation—citing *Boucher v. U.S. Suzuki Motor Corp.* as support. 73 F.3d 18 (2d Cir. 1996).

Defendants cannot rely on *Boucher*. As a primary point, the work-life expectancy tables in *Boucher* were properly admitted. Rather, the Second Circuit questioned the calculation of the injured party's full-time work and fringe benefits. *Id.* at 22–23. In *Boucher*, an expert estimated that the injured party would work "40 hours per week, 52 weeks per year, with fringe benefits and regular pay increases, for the rest of his career." *Id.* at 22. This assumption was "unrealistic" for the injured party because his "sporadic employment had yielded fluctuating low levels of income, with long spells of no income whatsoever" and he received "few fringe benefits, if any." *Id.* For the plaintiff in *Boucher,* there was no evidence to support that he had ever held stable, full-time employment or received meaningful benefits, or that he would likely have either in the future.

This Court has already held that there is enough evidence here that "a reasonable jury could find that, if Ms. Zak's liver had not sustained damage from the April 10, 2017, ablation, she could have returned to her normal life, including work." Dkt No. 248. Defendants claim that "none of plaintiff's medical experts or treating physicians have supported this position" is a patent misstatement of the evidence. With Pembro, Erika Zak was cancer-free within months. Dr. Lopez, Erika's oncologist, stated that if Erika had not died in the transplant surgery, he would have expected that she would have had a prolonged period of disease control allowing her to "manage her disease for an extended period of time." **Exhibit A**, Deposition of Dr. Charles Lopez (v.1 Tr. 33:7–34:1). By February 13, 2018, Erika's treating physician Dr. Mayo updated Dr. Kemeny that

2

the "CEA [cancer marker] is undetectable and lesions and all nodes gone with pembro." **Exhibit B**, Kemeny Emails_007. In March 2018, Dr. Mayo noted that "From our perspective and our experience thus far with this agent (pembrolizumab) we would keep treating her and she would likely have complete cure of her disease." **Exhibit C**, ZAK_NY 001002–03. Plaintiff's expert and Erika's treating physician, Dr. DeMatteo, likewise stated that "[f]rom the end of 2018 until her death in August of 2019, there was no threat to Erika's life based on her cancer because it was under control." **Exhibit D**, Dr. DeMatteo's Report, p. 17.

Memorial Sloan Kettering boasts the miraculous, long-term effects of Pembro on their own website. For patients in which immunotherapy is effective, such as for Erika Zak, Memorial Sloan Kettering found "100% Remission of Rectal Cancer," finding that "[i]n every case, the rectal cancer "disappeared after immunotherapy — without the need for the standard treatments of radiation, surgery, or chemotherapy — and the cancer has not returned in any of the patients, who have been cancer-free for up to two years." **Exhibit E**, *Rectal Cancer Disappears After Experimental Use of Immunotherapy,* MEMORIAL SLOAN KETTERING CANCER CENTER (June 5, 2022).

For Dr. Smith to base his calculations on the assumption that Erika Zak would have been among these fortunate cancer survivors and would have returned to the workforce using her art and passion to pursue the career that she loved is not unrealistic. Plaintiff intends for Stan Smith to help the jury with their calculations of what Erika would have earned in wages and benefits, minus personal consumption for future figures. Plaintiff does not intend to use Stan Smith for any other purpose and intends to submit a revised report this week, narrowing Stan Smith's opinions to that effect.

Lastly, Defendants claim that Stan Smith's calculations have no factual basis. This is plainly false. As outlined in his report, Stan Smith bases his calculations on interviews with Plaintiff Scott Powers, Erika's husband. He also consults several empirical sources for his calculations, such as the U.S. Department of Labor, Bureau of Labor Statistics, and personal consumption tables from the Journal of Legal Economics. *See* **Exhibit F,** Stan Smith's Report.

Defendants complain that Stan Smith did not rely on specific items from the universe of possible evidence they consider necessary but fail to suggest how this makes his opinions less reliable. For despite possessing these documents themselves, Defendants have alleged no actual inaccuracy. Plaintiff provided Defendants with an unrestricted employment records authorization. Dkt. No. 49. Likewise, Plaintiff provided Defendants with a tax information authorization for all income, employment, and W-2 records from 2012–2019. If any information in those records conflict with the information relied on by Dr. Smith, Defendants may cross-examine him on that subject.

Despite making no arguments about the actual weakness of the factual basis of Stan Smith's opinions, "[m]ere weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility." *Joffe v. King & Spalding LLP*, No. 17-CV-3392 (VEC), 2019 U.S. Dist. LEXIS 163671 at *17, 2019 WL 4673554 (S.D.N.Y. Sep. 24, 2019); *see also In re Elysium Health-ChromaDex Litig.*, No. 17-cv-7394 (LJL), 2022 U.S. Dist. LEXIS 25063 at *5, 2022 WL 421135 (S.D.N.Y. Feb. 11, 2022) (stating that "'errors in methodology properly go only to the weight of the evidence' and not to its admissibility.") (quoting *Schering Corp. v. Pfizer Inc.,* 189 F.3d 218, 227–28 (2d Cir. 1999) (internal alterations omitted); *Arista Records LLC v. Lime Grp. LLC*, No. 06 CV 5936 (KMW), 2011 U.S. Dist. LEXIS 47416

4

at *12 (S.D.N.Y. Apr. 29, 2011) (providing "that the assumptions relied on by an expert are unfounded is generally an argument that goes to the weight rather than the admissibility of the evidence."); *R.F.M.A.S., Inc. v. Mimi So,* 748 F. Supp. 2d 244 (S.D.N.Y. 2010) ("To the extent that a party questions the weight of the evidence upon which the other party's expert relied or the conclusions generated from the expert's assessment of that evidence, it may present those challenges through cross-examination of the expert. Minor flaws in an expert's analysis likewise can be probed through cross-examination and generally go to the weight to be accorded to the expert's testimony rather than admissibility.") (citing *Park West Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 326 (S.D.N.Y. 2009).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court deny Defendants' MIL number 6 to preclude the expert testimony of Stan Smith as limited by Plaintiff, and for whatever other further relief this Court deems just and proper.

> Respectfully submitted,
>
> HENDLER FLORES LAW, PLLC
>
> By: _____
> Scott M. Hendler
> shendler@hendlerlaw.com
> Laura A. Goettsche
> lgoettsche@hendlerlaw.com
> 901 S. MoPac Expressway
> Bldg. 1, Suite #300
> Austin, Texas 78746
> Tel: (512) 439-3200
> Fax: (512) 439-3201
> **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that, on August 24, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record for Defendants.

Scott M. Hendler