## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Scott Powers, individually, as Representative of the Estate of Erika Zak, and as the natural guardian of L.P., a minor, | Case No.: 1:20-cv-02625 (LGS) |
| **Plaintiff,** | |
| vs. | |
| Constantinos Sofocleous, and Memorial Sloan Kettering Cancer Center, | |
| **Defendants.** | |

## JOINT PROPOSED REQUESTS TO CHARGE

In accordance with the Court's Scheduling Order dated March 28, 2022, the Parties respectfully submit the following Requests to Charge pursuant to Federal Rule 51 and reserve the right to submit supplemental or additional requests as may be appropriate based on the evidence adduced at trial. Unless otherwise indicated, the below references are to the New York Pattern Jury Instructions (PJI), upon which the request is based. The parties respectfully request this Court to charge the jury in accordance with the following:

### I.    Joint requests to charge, except the parties disagree where noted

**PJI 1:20 – Introduction**
**PJI 1:21 - Review Principles Stated**
**PJI 1:22 - Falsus in Uno**
        Plaintiff requests PJI 1:61, but Defendants disagree and request PJI 1:23.
**PJI 1:24 - Return to Courtroom**
**PJI 1:25 - Consider only Testimony and Exhibits**
**PJI 1:25A. Juror's Use of Professional Expertise** (If applicable.)
**PJI 1:25B. Juror Note Taking** (To the extent the Court allows note taking.)
        The parties agree to PJI 1:25C, but disagree on language.
        The parties agree to PJI 1:92, but disagree on language.
        The parties agree to PJI 1:26, but disagree on language.
        Plaintiff requests PJI 1:78. Defendants object.
        The parties agree to PJI 1:90, but disagree on language.
**PJI 1:27 Exclude Sympathy**

8432774

**PJI 1:27A. Fair Juror and Absence of Implicit or Conscious Bias**
**PJI 1:28. Jury Function**
**PJI 1:31 Alternate/Additional Jurors**
**PJI 1:70. General Instruction—Direct and Circumstantial Evidence**
**PJI 1:90.1. Expert Witness— Learned Works** (To the extent required.)
**PJI 1:90.2 Demonstrative—Limited Purpose** (To the extent required.)
**PJI 1:94. General Instruction—Use of Pre-Trial Deposition Upon Trial** (To the extent
required.)
**PJI 2:277A.  Damages – Comment by Counsel During Closing Remarks** (If applicable.)
 **Plaintiff requests PJI 2:10. Defendants object.**
 **The parties agree to PJI 2:150, but disagree on language.**
 **Defendants request special instruction No. 1.  Plaintiff objects.**
 **The parties agree to PJI 2:70, but disagree on language.**
 **Defendants request special instruction No. 2.  Plaintiff objects.**
 **The parties agree to 2:150A, but disagree on language.**
 **The parties agree to PJI 2:277, but disagree on language.**
 **The parties agree to PJI 2:280.1, but disagree on language.**
 **Defendant requests PJI 2:280.2. Plaintiff objects.**
 **Plaintiff requests PJI 2:283. Defendants object.**
 **Plaintiff requests PJI 2:284. Defendants object.**
 **Plaintiff requests PJI 2:285 Defendants object.**
 **Plaintiff requests PJI 2:305. Defendants object.**
 **Plaintiff requests PJI 2:315, but Defendants disagree on language and placement.**
 **Plaintiff requests PJI 2:316.  Defendants object.**
 **Plaintiff requests PJI 2:320.2. Defendants object.**
 **The parties agree on PJI 2:320, but disagree on language.**
 **Defendants request PJI 2:320.1. Plaintiff objects.**
 **Defendants request PJI 2:320.3, but only if future lost earnings are allowed.**
 **The parties agree to PJI 2:320.4, but only if loss of pre-death earnings is allowed.**
**PJI 2:320.5.  Income Taxes on Award**
**PJI 1:30. Conclusion**


  II. <u>**Joint requests to charge, but the parties cannot agree on language**</u>

The differences in language are bolded in each proposed instruction.

**PJI 1:25C. General Instruction—Interested Witness—Generally**

<u>**Plaintiff's Proposed Instruction**</u>

**Scott Powers** and **Dr. Constantinos Sofocleous each** testified before you. As parties to the
action, both are interested witnesses, that is, they have an interest in the outcome of the case that
may have affected their testimony.

8432774

**Even though not a party to the action, Dr. Nancy Kemeny is an interested witness because she is a person directly charged with having caused the injury to plaintiff, she may have a motive to shield herself from blame.**

An interested witness is not necessarily less believable than a disinterested witness. The fact that **they are** interested in the outcome of the case does not mean that **they have** not told the truth. It is for you to decide from the demeanor of the witness on the stand and such other tests as your experience dictates whether or not the testimony has been influenced, intentionally or unintentionally, by **their** interest. You may reject the testimony if, after careful consideration of all the evidence in the case, including the cross-examination of the witness, you decide you do not believe the testimony or you find it is not reliable. On the other hand, you are not required to reject the testimony of such a witness and may accept all or such part of **their** testimony as you find believable and reliable and reject such part as you find unworthy of acceptance. The testimony is entitled to such weight as you decide it is worth.

## Plaintiff's Position for his version of PJI 1:25C

Plaintiff maintains that it is appropriate in this case in which there is a plaintiff appearing in multiple roles, a decedent, and multiple defendants including multiple tortfeasors to specify plaintiff, decedent, and defendants by name where applicable.

Defendant has a pending motion in limine to exclude reference to Dr. Kemeny's wrongdoing. However, Plaintiff brings medical malpractice claims against Defendant Memorial Sloan Kettering for the wrongdoing of their doctors, including Dr. Kemeny. Her inclusion in this interested witness instruction is therefore necessary.

Defendants brought a motion for summary judgment seeking to dismiss Plaintiff's claims involving the failures of Dr. Kemeny and that motion was denied by this Court. Dkt No. 229 & 248. Since they did not win their summary judgment motion, Defendants now attempt to pretend that this claim, for which they sought summary judgment relief, in fact never existed. Not only has Plaintiff maintained this claim, but this Court found sufficient evidence of the claim to deny summary judgment. For further argument, Plaintiff refers the Court to his papers in opposition to Defendants Motion in Limine number 7. Dkt. No. 349 & 350.

## Defendants' Proposed Instruction

**The plaintiff** and **the defendant both** testified before you. As parties to the action, both are interested witnesses, that is, they have an interest in the outcome of the case that may have affected their testimony.

An interested witness is not necessarily less believable than a disinterested witness. The fact that **he is** interested in the outcome of the case does not mean that **he has** not told the truth. It is for you to decide from the demeanor of the witness on the stand and such other tests as your experience dictates whether or not the testimony has been influenced, intentionally or unintentionally, by **his** interest. You may reject the testimony if, after careful consideration of all the evidence in the case, including the cross-examination of the witness, you decide you do not believe the testimony or you find it is not reliable. On the other hand, you are not required to

8432774

reject the testimony of such a witness and may accept all or such part of **his** testimony as you find believable and reliable and reject such part as you find unworthy of acceptance. The testimony is entitled to such weight as you decide it is worth.

### Defendants' Position for their version of PJI 1:25C

Defendants' proposed instruction is verbatim from PJI 1:25C and refers to "the plaintiff" and "the defendant", and therefore, is the appropriate language to use.

Contrary to Plaintiff's contention, there are not multiple tortfeasors in this action. This action concerns the medical care rendered by the one individually named defendant, Dr. Sofocleous, and it concerns one medical procedure: the ablation performed on April 10, 2017.  All of the injuries claimed in this action were allegedly caused by the ablation, which was solely performed by Dr. Sofocleous.  Despite Plaintiff's contention, the Court did not rule on that aspect of Defendants' motion for summary judgment seeking to dismiss any purported claims against Dr. Kemeny.   Accordingly, there is no basis to claim that Dr. Kemeny was "an actor in the transaction at issue" because she neither consented Ms. Zak for the ablation nor performed the ablation.  Therefore, Dr. Kemeny should not be named as an interested witness under PJI 1:25C.

See Hill v. Arnold, 226 A.D.2d 232, 640 N.Y.S.2d 892 (1st Dept. 1996) (appropriate to charge nurse as interested witness where she was an actual tortfeasor in the treatment of the plaintiff).

**PJI 1:92. General Instruction—Interested Witness—Employee of Party**

### Plaintiff's Proposed Instruction

The fact that the witness**es Dr. Sofocleous and** Dr. Kemeny **were** and still **are** employed by Defendant **Memorial Sloan Kettering Cancer Center**, and the testimony you have heard of **their** relationship with **their** employer, may be considered by you in deciding whether the testimony of **Dr. Sofocleous and** Dr. Kemeny **was** in any way influenced by the employment relationship with Defendant **Memorial Sloan Kettering Cancer Center**.

### Plaintiff's Position for his version of PJI 1:92

Plaintiff maintains that "[i]t is error to refuse to give the suggested charge if the witness is an employee of a party at the time of trial." N.Y. Pattern Jury Instruction, vol. 1A, p. 214 (2022) (citing *Adams v Supermarkets General Corp.,* 138 AD2d 253, 525 NYS2d 208 (N.Y. App. 1st Dept 1988)). The New York Pattern Jury Instruction further emphasizes that "there is a difference in emphasis between the pattern charge [PJI 1:92] and PJI 1:25C." *Id.* Specifically, one describes the potential for bias when a party is charged with wrongdoing—PJI 1:25C—and the other outlines the potential for bias when a party is employed for a party—PJI 1:92. In this case, because both are true, the addition of PJI 1:92 to PJU 1:25C is appropriate.

### Defendants' Proposed Instruction

The fact that the witness Dr. Kemeny **was** and still **is** employed by defendant and the testimony you have heard of **her** relationship with **her** employer may be considered by you in deciding

whether the testimony of Dr. Kemeny **is** in any way influenced by the employment relationship with defendant.

<u>**Defendants' Position for their version of PJI 1:92**</u>

Defendants' proposed instruction is verbatim from PJI 1:92 and refers to "defendant", and therefore, is the appropriate language to use.

It is not appropriate to name Dr. Sofocleous in this charge as he was already named as an interested witness under PJI 1:25C.  It is prejudicial to name Dr. Sofocleous as an interested witness in two separate charges to the jury.  The commentary to this charge recognizes the distinction between PJI 1:25C and 1:92, but does not state or imply that it is appropriate to name the same witness in both charges.  As the commentary notes, under PJI 1:25C, Dr. Sofocleous being an interested witness as a party to the action suggests more careful scrutiny.  It is unnecessary, duplicative and prejudicial to charge Dr. Sofocleous as possibly being biased because of his employment relationship with Memorial under PJI 1:92.  Despite Plaintiff's contention, there is no error not to name Dr. Sofocleous as in interested witness under PJI 1:92 because he will be charged as an interested witness under PJI 1:25C.

Since Dr. Kemeny is an employee of defendant she is appropriately named in this charge. However, should the Court accept Plaintiff's position that she should be named as an interested witness under PJI 1:25C, then she should not also be named as an interested witness under PJI 1:92 for the same reasons Dr. Sofocleous should not be named as an interested witness twice.

**PJI 1:26. General Instruction—Special Verdicts & General Verdicts Supported by Written Interrogatories**

<u>**Plaintiff's Proposed Instruction**</u>

This case will be decided on the basis of answers you give to written questions that will be submitted to you. Each of the questions calls for a "Yes" or "No" answer, some numerical figure, **and some number of years**. **While it is important that the views of all jurors be considered, five of the six of you must agree on the answer to any question, but the same five persons need not agree on all the answers.** When **five** of you have agreed on any answer, the foreperson of the jury will write the answer in the space provided for each answer and each of you will sign in the appropriate place to indicate your agreement **or disagreement**. Each question will be followed by an instruction as to how you will proceed based upon your answer to that question.

**If you disagree with an answer that five jurors have agreed upon, you should not stop deliberating and you should not stop voting on the rest of the questions that need to be answered. In other words, you should continue participating in the deliberations and voting on all questions that require answers.**

<u>**Plaintiff's Position for his version of PJI 1:26**</u>

Plaintiff maintains that the prompt "insert appropriate phrase" rightfully includes "some number of years" because for Plaintiff's pecuniary loss wrongful death damage category requires

the jury to specify what number of years the award is given for each distributee. *See* PJI 2:320 below.

New York Civil Practice Law and Rules section 4113 states that "[a] verdict may be rendered by not less than five-sixth of the jurors constituting a jury." N.Y. CPLR § 4113(a). PJI 1:26 must be given when written interrogatories are used. *See* N.Y. Pattern Jury Instruction, vol. 1A, p. 68–70 (2022); *see also* N.Y. CPLR § 4111. Consent to a less than unanimous verdict is only required when a general verdict is to be obtained. *Id.*

### Defendants' Proposed Instruction

This case will be decided on the basis of answers you give to written questions that will be submitted to you. Each of the questions calls for a "Yes" or "No" answer, some numerical figure, **etc.** When **all six** of you have agreed on any answer, the foreperson of the jury will write the answer in the space provided for each answer and each of you will sign in the appropriate place to indicate your agreement. Each question will be followed by an instruction as to how you will proceed based upon your answer to that question.

### Defendants' Position for their version of PJI 1:26

Defendants' proposed "*Insert appropriate phrase*" is verbatim from PJI 1:26 and includes "a 'Yes' or 'No' answer, some numerical figure, etc.", and therefore, is the appropriate language to use.  Plaintiff's version of adding "and some number of years" is an inappropriate phrase as it prejudicially implies an award should be given.

Since Defendants do not consent to a less than a unanimous verdict, the proposed instruction omits the language regarding five of the six agreeing to any question, and other similar language.

### PJI 1:90. General Instruction—Expert Witness

### Plaintiff's Proposed Instruction

You will recall Dr. Ronald DeMatteo; Dr. David Bernstein; Dr. Aaron Fischman; Dr. S. Nahum Goldberg; Dr. Douglas Rubinson; Dr. Michael Sadler; Dr. Neil Theise; and Dr. Rakesh Navuluri testified concerning their qualifications in the fields of medicine and gave their opinions concerning issues in this case. When a case involves a matter of science or art or requires special knowledge or skill that most people do not have, a qualified witness is permitted to state his or her opinion for the information of the court and jury. The opinions stated by the experts in this case were based on particular facts, as they obtained knowledge of them and testified about them or as the attorneys who questioned them asked them to assume.

You may reject any opinion if you find the facts to be different from the facts that formed the basis for the opinion. You may also reject an opinion if, after careful consideration of all the evidence in the case, including the cross-examination of the experts in this case you decide that an opinion is not convincing. In other words, you are not required to accept any opinion to the exclusion of the facts and circumstances disclosed by other evidence. Opinion testimony should

8432774

be evaluated in the same way as the testimony of any other witness. It is given to assist you in reaching a proper conclusion; it is entitled to such weight as you find the witness's qualifications in the field warrant and must be considered by you, but is not controlling upon your judgment.

**Plaintiff's Position for his version of PJI 1:90**

Plaintiff maintains that the inclusion of non-experts in this instruction is inappropriate. Defendants' version attempts to include Erika's treating physicians, Drs. Mayo, Lopez, Sofocleous and Kemeny, in this charge. None of those treating physicians have been designated as experts in this case. This Court made abundantly clear that a party would rely on a treating physician "for testimony beyond what he or she observed as a fact witness during the course of treatment of Ms. Zak," that party shall produce an expert report for that witness within two weeks of their deposition. Dkt. No. 81. No expert report has ever been produced for Drs. Mayo, Lopez, Sofocleous or Kemeny. These witnesses have never been qualified as expert witnesses. Their inclusion in this instruction is inappropriate.

Defendants cite to various cases in support of their position that they may offer Dr. Constantinos Sofocleous as an expert despite him never having been designated and qualified as an expert. This position is misstated. New York law permits "*a plaintiff* in a malpractice action is entitled to call the defendant doctor to the stand and question him both as to his factual knowledge of the case (that is, as to his examination, diagnosis, treatment and the like) and, *if he be so qualified,* as an expert for the purpose of establishing the generally accepted medical practice in the community." *McDermott v. Manhattan Eye, Ear & Throat Hosp.*, 15 N.Y.2d 20, 29–30, 255 N.Y.S.2d 65, 203 N.E.2d 469 (N.Y. 1964) (emphasis added); *see also Braun v. Ahmed*, 127 A.D.2d 418, 420, 515 N.Y.S.2d 473 (N.Y. App. Div. 2nd Dept. 1987) (stating that "it is also well settled that *a plaintiff* in a medical malpractice action may call as a witness the doctor against whom she brought the action and question him as a medical expert." (emphasis added) (internal marks omitted)); *Vega v. LaPalorcia*, 281 A.D.2d 623, 624, 722 N.Y.S.2d 563 (N.Y. App. Div. 2nd Dept. 2001) ("It is well settled that *a plaintiff* in a medical malpractice action may call as a witness the defendant doctor and question him or her as an expert witness.") (emphasis added); *Lieblich v. Saint Peter's Hosp. of The City of Albany,* 112 A.D.3d 1202, 1204, 977 N.Y.S.2d 780 (N.Y. App. Div. 3rd Dept.) (proving that "*a plaintiff* is entitled to call the defendant doctor to the stand and question him or her both as to his or her] factual knowledge of the case (that Is, as to his or her examination, diagnosis, treatment and the like) and, *if he or she be so qualified*, as an expert for the purpose of establishing the generally accepted medical practice in the community.") (emphasis added) (internal alterations omitted)). Plaintiff does not intend to offer Dr. Sofocleous as an expert.

**Defendants' Proposed Instruction**

You will recall **Dr. Constantinos Sofocleous, Dr. Nancy Kemeny; Dr. Skye Mayo; Dr. Charles Lopez;** Dr. Ronald DeMatteo; Dr. David Bernstein; Dr. Aaron Fischman; Dr. S. Nahum Goldberg; Dr. Douglas Rubinson; Dr. Michael Sadler; Dr. Neil Theise; and Dr. Rakesh Navuluri **[to be listed in the order called at trial]** testified concerning their qualifications in the fields of

8432774

medicine and gave their opinions concerning issues in this case. When a case involves a matter of science or art or requires special knowledge or skill that most people do not have, a qualified witness is permitted to state his or her opinion for the information of the court and jury. The opinions stated by **[List names as stated above]** were based on particular facts, as they obtained knowledge of them and testified about them or as the attorneys who questioned them asked them to assume.

You may reject any opinion if you find the facts to be different from the facts that formed the basis for the opinion. You may also reject an opinion if, after careful consideration of all the evidence in the case, including the cross-examination of **[List names as stated above]**, you decide that an opinion is not convincing. In other words, you are not required to accept any opinion to the exclusion of the facts and circumstances disclosed by other evidence. Opinion testimony should be evaluated in the same way as the testimony of any other witness. It is given to assist you in reaching a proper conclusion; it is entitled to such weight as you find the witness's qualifications in the field warrant and must be considered by you, but is not controlling upon your judgment.

### Defendants' Position for their version of PJI 1:90

Defendants' proposed instruction that includes Ms. Zak's testifying and treating physicians, including the defendant physician, is appropriate given their specialized knowledge in the medical profession that will benefit the jury when deciding this case. There is no dispute that these physicians are deemed to have sufficient qualifications to testify as to the medical issues in this case. Plaintiff's position that only an expert who provides a written report under FRCP 26(a)(2)(B) can be considered qualified in the field of medicine to give opinions concerning the issues in this case has no merit, especially in light of the fact that these physicians' testimony will be heard by the jury.

Drs. Sofocleous, Kemeny, Mayo and Lopez are all qualified medical professionals in their fields of medicine (interventional radiology, medical oncology, surgical oncology, and medical oncology, respectively) and treated Ms. Zak, such that they can tell the jurors something significant that a juror would not ordinarily be expected to know. Plaintiff explicitly noticed each of them for depositions and elicited their opinions concerning the medical issues in this case. Indeed, Plaintiff's counsel extensively questioned each of these doctors on matters regarding causation and damages and this testimony will be heard by the jury. Plaintiff's counsel also extensively questioned Dr. Sofocleous on standard of care issues, which will also be heard by the jury. Since the purpose of the testimony to be offered is to determine liability, the jury must be instructed that all of Ms. Zak's treating physicians, including the defendant, who testified are qualified in the filed of medicine to have rendered their opinions to the jury.

See People v. Inoa, 25 N.Y.3d 466, 475 (2015) ("Those rules, it is true, allow the receipt of expert opinion evidence to clarify relevant issues not amenable to understanding by jurors of average intelligence and experience…"); Vega v. LaPalorcia, 281 A.D.2d 623, 624 (2d Dept. 2001) ("It is well settled that a plaintiff in a medical malpractice action may call as a witness the

defendant doctor and question him or her as an expert witness."); <u>McDermott v. Manhattan Eye, Ear & Throat Hosp.</u>, 15 N.Y.2d 20, 29-30 (1964) (same); <u>Lieblich v. Saint Peter's Hosp. of the City of Albany</u>, 112 A.D.3d 1202, 1205 (3rd 2013) (same principle applies to deposition testimony of physicians); <u>Zinn v. Jefferson Towers, Inc.</u>, 14 AD3d 398, 399 (1st Dept. 2005) ("an expert witness should not be disqualified merely because of a personal interest in the event").

Defendants note that all the physicians noted above may likely not testify at trial; therefore, Defendants ask that the list be modified to list only those physicians who offer testimony to the jury.

**PJI 2:150 Malpractice—Physician**

## <u>Plaintiff's Proposed Instruction</u>

Malpractice is professional negligence and medical malpractice is the negligence of a doctor. Negligence is the failure to use reasonable care under the circumstances, doing something that a reasonably prudent doctor would not do under the circumstances, or failing to do something that a reasonably prudent doctor would do under the circumstances. It is a deviation or departure from accepted practice.

A doctor who renders medical service to a patient is obligated to have that reasonable degree of knowledge and skill that is expected of an average doctor who performs that treatment in the medical community in which the doctor practices.

The law recognizes that there are differences in the abilities of doctors, just as there are differences in the abilities of people engaged in other activities. To practice medicine a doctor is not required to have the extraordinary knowledge and ability that belongs to a few doctors of exceptional ability. However every doctor is required to keep reasonably informed of new developments in his field and to practice medicine in accordance with approved methods and means of treatment in general use. A doctor must also use his or her best judgment and whatever superior knowledge and skill he possesses, even if the knowledge and skill exceeds that possessed by the average doctor in the medical community where the doctor practices.

By undertaking to perform a medical service, a doctor does not guarantee a good result. The fact that there was a bad result to the patient, by itself, does not make the doctor liable. The doctor is liable only if he was negligent. Whether the doctor was negligent is to be decided on the basis of the facts and conditions existing at the time of the claimed negligence.

A doctor is not liable for an error in judgment if he **or she** does what he **or she** decides is best after careful evaluation if it is a judgment that a reasonably prudent doctor could have made under the circumstances. In other words, a doctor is not liable for malpractice if he or she chooses one of two or more medically acceptable courses of action.

If the doctor is negligent, that is, lacks the skill or knowledge required of **them** in providing a medical service, or fails to use reasonable care in providing the service, or fails to exercise his or her best judgment, and such failure is a substantial factor in causing harm to the patient, then the doctor is responsible for the injury or harm caused.

### Plaintiff's Position for his version of PJI 2:150

Plaintiff maintains the inclusion of the language "including judgment charge" is confusing and unnecessary. On the whole, the parties agree on language. However, Plaintiff's version uses the pronouns "he or she" to specify that the negligence the jury is considering is that of Dr. Sofocleous (male) and Dr. Kemeny (female).

### Defendants' Proposed Instruction

Malpractice is professional negligence and medical malpractice is the negligence of a doctor. Negligence is the failure to use reasonable care under the circumstances, doing something that a reasonably prudent doctor would not do under the circumstances, or failing to do something that a reasonably prudent doctor would do under the circumstances. It is a deviation or departure from accepted practice.

A doctor who renders medical service to a patient is obligated to have that reasonable degree of knowledge and skill that is expected of an average doctor who performs that treatment in the medical community in which the doctor practices.

The law recognizes that there are differences in the abilities of doctors, just as there are differences in the abilities of people engaged in other activities. To practice medicine a doctor is not required to have the extraordinary knowledge and ability that belongs to a few doctors of exceptional ability. However every doctor is required to keep reasonably informed of new developments in his field and to practice medicine in accordance with approved methods and means of treatment in general use. A doctor must also use his or her best judgment and whatever superior knowledge and skill he possesses, even if the knowledge and skill exceeds that possessed by the average doctor in the medical community where the doctor practices.

By undertaking to perform a medical service, a doctor does not guarantee a good result. The fact that there was a bad result to the patient, by itself, does not make the doctor liable. The doctor is liable only if he was negligent. Whether the doctor was negligent is to be decided on the basis of the facts and conditions existing at the time of the claimed negligence.

A doctor is not liable for an error in judgment if **he** does what **he** decides is best after careful evaluation if it is a judgment that a reasonably prudent doctor could have made under the circumstances. In other words, a doctor is not liable for malpractice if he or she chooses one of two or more medically acceptable courses of action.

8432774

If the doctor is negligent, that is, lacks the skill or knowledge required of **him** in providing a medical service, or fails to use reasonable care in providing the service, or fails to exercise his or her best judgment, and such failure is a substantial factor in causing harm to the patient, then the doctor is responsible for the injury or harm caused.

### <u>Defendants' Position for their version of PJI 2:150</u>

Plaintiff agrees that the "error in judgment" paragraph should be included in the charge, so the only dispute is whether Dr. Kemeny should be referenced by the use of the pronoun "she" in the concluding paragraph.  For all the reasons set forth herein, in Defendants' Motions *in limine*, and in Defendants' positions and objections to the proposed verdict sheets, no claims of malpractice were pled against Dr. Kemeny and she should not be referenced in the charge. Therefore, Defendants' proposed instruction of only referring to "he" and "him" (i.e., Dr. Sofocleous) is appropriate.

**PJI 2:70. Proximate Cause—In General**

### <u>Plaintiff's Proposed Instruction</u>

An act or omission is regarded as a cause of an injury **or death** if it was a substantial factor in bringing about the injury **or death**, that is, if it had such an effect in producing the injury **or death** that reasonable people would regard it as a cause of the injury **or death**. There may be more than one cause of an injury **or death**, but to be substantial, it cannot be slight or trivial. You may, however, decide that a cause is substantial even if you assign a relatively small percentage to it.

### <u>Plaintiff's Position for his version of PJI 2:70</u>

Plaintiff maintains that the addition of the term "death" is important as the jury is determining whether Defendants' conduct was the proximate cause of Erika Zak's injury and whether Defendants' conduct was the proximate cause of her death.

### <u>Defendants' Proposed Instruction</u>

An act or omission is regarded as a cause of an injury if it was a substantial factor in bringing about the injury, that is, if it had such an effect in producing the injury that reasonable people would regard it as a cause of the injury. There may be more than one cause of an injury, but to be substantial, it cannot be slight or trivial. You may, however, decide that a cause is substantial even if you assign a relatively small percentage to it.

### <u>Defendants' Position for their version of PJI 2:70</u>

Defendants' proposed instruction is verbatim from PJI 2:70 and refers to "injury", and therefore, is the appropriate language to use.  Death is included in the term "injury" and it is unnecessary to separate out any specific injury alleged, including death.

8432774

**PJI 2:150A. Malpractice—Informed Consent**

<u>**Plaintiff's Proposed Instruction**</u>

Before obtaining a patient's consent to an operation or invasive diagnostic procedure or the use of medication, a doctor has the duty to provide certain information concerning what the doctor proposes to do, the alternatives to that operation, procedure or medication and the reasonably foreseeable risks of such operation, procedure or medication. It is the doctor's duty to explain, in words that are understandable to the patient, all the facts that would be explained by a reasonable medical practitioner so that when the patient does, in fact, consent, that consent is given with an awareness of (1) the patient's existing physical condition; (2) the purposes and advantages of the operation, procedure or medication; (3) the reasonably foreseeable risks to the patient's health or life which the operation, procedure or medication may impose; (4) the risks involved to the patient if there is no operation, procedure or use of medication; and (5) the available alternatives and the risks and advantages of those alternatives.

The first question on this issue that you will be called upon to answer is whether **Dr. Sofocleous**, before obtaining **Erika Zak's** consent, provided appropriate information.

The question reads as follows:

(1) Did **Dr. Sofocleous,** before obtaining **Erika Zak's** consent to the ablation procedure **on April 10, 2017**, provide appropriate information?

Plaintiff maintains that the answer to this question is "No" contending that [set forth the specific risks and/or alternatives that plaintiff claims were not disclosed].

Defendant maintains that the answer to the question is "Yes" and contends that (the information was, in fact, provided, or a reasonable medical practitioner would not provide such information to the patient in a case such as this).

If you answer "No" to the question, the next question you must decide is whether a reasonably prudent person in the **Erika's** position would have decided not to undergo the **ablation** procedure if given appropriate information concerning the risks and alternatives.

The question reads as follows:

(2) Would a reasonably prudent person in **Erika Zak's** position at the time consent was given have decided not to undergo the ablation procedure **on April 10, 2017** if given appropriate information?

Plaintiff maintains that the answer to this question is "Yes," contending that considering the nature of **Erika's** condition at the time and the risks involved in the **(operation, procedure, use**

**of medication)** and the available alternatives, a reasonably prudent person would not have consented to the **(operation, procedure, use of medication)**.

Defendant maintains that the answer to this question is "No," contending that considering **Erika's** condition and the need for the procedure the omitted information would not have caused a reasonably prudent person to refuse to consent to the procedure.

In answering this question it is important that you consider only **Erika Zak's** condition at the time consent was given and the facts and circumstances that existed at that time and not events that occurred or knowledge that was obtained at a later time.

If you answer "Yes" to question two, the next and last question to be resolved on this issue is whether the procedure was a substantial factor in causing the injury to decedent.

The question reads as follows:

(3) Was the procedure a substantial factor in causing the injury to **Erika**?

## Plaintiff's Position for his version of PJI 2:150A

Plaintiff maintains that it is appropriate in this case in which there is a plaintiff appearing in multiple roles, a decedent, and multiple defendants including multiple tortfeasors to specify plaintiff, decedent, and defendants by name where applicable.

## Defendants' Proposed Instruction

Before obtaining a patient's consent to an operation or invasive diagnostic procedure or the use of medication, a doctor has the duty to provide certain information concerning what the doctor proposes to do, the alternatives to that operation, procedure or medication and the reasonably foreseeable risks of such operation, procedure or medication. It is the doctor's duty to explain, in words that are understandable to the patient, all the facts that would be explained by a reasonable medical practitioner so that when the patient does, in fact, consent, that consent is given with an awareness of (1) the patient's existing physical condition; (2) the purposes and advantages of the operation, procedure or medication; (3) the reasonably foreseeable risks to the patient's health or life which the operation, procedure or medication may impose; (4) the risks involved to the patient if there is no operation, procedure or use of medication; and (5) the available alternatives and the risks and advantages of those alternatives.

The first question on this issue that you will be called upon to answer is whether **the defendant**, before obtaining **decedent's** consent, provided appropriate information.

The question reads as follows:

8432774

(1) Did **defendant** before obtaining **decedent's** consent to the ablation procedure provide appropriate information?

Plaintiff maintains that the answer to this question is "No" contending that [*set forth the specific risks and/or alternatives that plaintiff claims were not disclosed*].

Defendant maintains that the answer to the question is "Yes" and contends that (*the information was, in fact, provided, or a reasonable medical practitioner would not provide such information to the patient in a case such as this*).

If you answer "No" to the question, the next question you must decide is whether a reasonably prudent person in **the decedent's** position would have decided not to undergo the procedure if given appropriate information concerning the risks and alternatives.

The question reads as follows:

(2) Would a reasonably prudent person in **the decedent's** position at the time consent was given have decided not to undergo the ablation procedure if given appropriate information?

Plaintiff maintains that the answer to this question is "Yes," contending that considering the nature of **decedent's** condition at the time and the risks involved in the **procedure** and the available alternatives, a reasonably prudent person would not have consented to the **procedure**.

Defendant maintains that the answer to this question is "No," contending that considering **decedent's** condition and the need for the procedure the omitted information would not have caused a reasonably prudent person to refuse to consent to the procedure.

In answering this question it is important that you consider only **decedent's** condition at the time consent was given and the facts and circumstances that existed at that time and not events that occurred or knowledge that was obtained at a later time.

If you answer "Yes" to question two, the next and last question to be resolved on this issue is whether the procedure was a substantial factor in causing the injury to decedent.

The question reads as follows:

(3) Was the procedure a substantial factor in causing the injury to **decedent**?

### **Defendants' Position for their version of PJI 2:150A**

Defendants' proposed instruction is verbatim from PJI 2:150A and refers to "defendant" and "decedent", and therefore, is the appropriate language to use.  Plaintiff's position that there are multiple parties appearing in multiple roles is inaccurate.  There is no dispute that the

informed consent claim involves two persons: the decedent, Ms. Zak, and the defendant, Dr. Sofocleous, and no re-wording of PJI 2:150A is warranted.

Defendants' note that the language in italics will need to be properly worded based on the evidence at trial.

**PJI 2:277. Damages—General**

<u>**Plaintiff's Proposed Instruction**</u>

My charge to you on the law of damages must not be taken as a suggestion that you should find for the plaintiff. It is for you to decide on the evidence presented and the rules of law I have given you whether the plaintiff is entitled to recover from the defendant. If you decide that the plaintiff is not entitled to recover from the defendants, you need not consider damages. Only if you decide that the plaintiff is entitled to recover will you consider the measure of damages.

If you find that the plaintiff is entitled to recover from the defendants, you must render a verdict in a sum of money that will justly and fairly compensate the plaintiff for all losses resulting from the injuries and disabilities **Erika Zak** sustained.

<u>**Plaintiff's Position for his version of PJI 2:277**</u>

Plaintiff maintains that it is appropriate in this case in which there is a plaintiff appearing in multiple roles, a decedent, and multiple defendants including multiple tortfeasors to specify plaintiff, decedent, and defendants by name where applicable.

<u>**Defendants' Proposed Instruction**</u>

My charge to you on the law of damages must not be taken as a suggestion that you should find for the plaintiff. It is for you to decide on the evidence presented and the rules of law I have given you whether the plaintiff is entitled to recover from the defendant. If you decide that the plaintiff is not entitled to recover from the defendants, you need not consider damages. Only if you decide that the plaintiff is entitled to recover will you consider the measure of damages.

If you find that the plaintiff is entitled to recover from the defendants, you must render a verdict in a sum of money that will justly and fairly compensate the plaintiff for all losses resulting from the injuries and disabilities sustained.

<u>**Defendants' Position for their version of PJI 2:277**</u>

PJI 2:277 provides for compensating "the plaintiff for all losses resulting from the injuries and disabilities (he, she) sustained." However, using the applicable "he" or even "Erika Zak" as proposed by Plaintiff does not adequately cover the losses claimed, so Defendants proposed language leaves out that word because the verdict sheet will adequately specify each person's loss being claimed in damages.

8432774

**PJI 2:280.1 Pain and Suffering—Loss of Enjoyment of Life**

<u>**Plaintiff's Proposed Instruction**</u>

In determining the amount, if any, to be awarded plaintiff for pain and suffering, you may take into consideration the effect that **Erika Zak's** injuries have had on **her** ability to enjoy life up to the time of death. Loss of enjoyment of life involves the loss of the ability to perform daily tasks, to participate in the activities which were a part of the person's life before the injury, and to experience the pleasures of life. However, a person suffers the loss of enjoyment of life only if the person is aware, at some level, of the loss that she has suffered. If you find that **Erika Zak** as a result of her injuries, suffered some loss of the ability to enjoy life and that **Erika** was aware, at some level, of a loss, you may take that loss into consideration in determining the amount to be awarded to plaintiff for pain and suffering.

<u>**Plaintiff's Position**</u>

Plaintiff maintains that it is appropriate in this case in which there is a plaintiff appearing in multiple roles, a decedent, and multiple defendants including multiple tortfeasors to specify plaintiff, decedent, and defendants by name where applicable.

<u>**Defendants' Proposed Instruction**</u>

In determining the amount, if any, to be awarded plaintiff for pain and suffering, you may take into consideration the effect that **decedent's** injuries have had on **decedent's** ability to enjoy life up to the time of death. Loss of enjoyment of life involves the loss of the ability to perform daily tasks, to participate in the activities which were a part of the person's life before the injury, and to experience the pleasures of life. However, a person suffers the loss of enjoyment of life only if the person is aware, at some level, of the loss that she has suffered. If you find that **decedent** as a result of her injuries, suffered some loss of the ability to enjoy life and that **decedent** was aware, at some level, of a loss, you may take that loss into consideration in determining the amount to be awarded to plaintiff for pain and suffering.

<u>**Defendants' Position and Objections**</u>

Defendants' proposed instruction is verbatim from PJI 2:150A and refers to "decedent", and therefore, is the appropriate language to use.  Plaintiff's position is misguided because there is only one decedent in this case.  Specification of individual names where not asked for in the PJI only serves to invoke emotion and sympathy, which is improper.

8432774

**PJI 2:320. Damages—Actions for Wrongful Death and Conscious Pain and Suffering**

<u>**Plaintiff's Proposed Instruction**</u>

As you have heard, the plaintiff, Scott Powers, is the representative of the estate of Erika Zak. Scott Powers makes two claims: the first claim seeks damages on behalf of himself and **their minor daughter** L.P. resulting from the death of Erika Zak and the second claim seeks damages for the injuries suffered and losses sustained by Erika Zak before she died. You must separately consider each of these claims.

As to the first claim, damages are the amount that you find to be fair and just compensation for the monetary losses resulting from Erika Zak's death to each of the persons for whom this claim is brought. Those persons are: Scott Powers, **Erika's** husband and L.P., **Erika's** daughter.

Scott Powers claims that these individuals have sustained monetary loss as a result of Erika Zak's death **including the loss of her services that she would have performed for Scott and L.P. in the care and management of their home; the loss of the portion of her earnings that she would have spent for the care and support of Scott and L.P.; the value of the intellectual, moral, and physical guidance that Erika Zak would have provided L.P.; and the amount that her estate would have increased, increasing the amount that Scott or L.P. would have inherited**.

Defendants claim [*state defendants' claims in relation to distributees' alleged pecuniary* loss].

The law limits damages resulting from Erika Zak's death to monetary injuries. You may not consider or make any award for sorrow, mental anguish, injury to feelings, or for loss of companionship. You must decide the monetary losses to Scott Powers and L.P. caused by Erika Zak's death on August 23, 2019. In deciding the amount of monetary losses, you should consider the character, habits and ability of Erika Zak; the circumstances and condition of Scott Powers and L.P.; **the services that Erika Zak would have performed for them; the portion of her earnings that Erika Zak would have spent in the future for the care and support of Scott Powers and L.P.;** the age and life expectancy of Erika Zak; the ages and life expectancies of Scott Powers and L.P.; and the value of the intellectual, moral, and physical training, guidance and assistance that Erika Zak would have given the child had she lived. **You should also consider the amount, if any, by which Erika Zak, if she had lived, would have increased her estate from her earnings and thus added to the amount that would have been inherited from her, provided that you find that at least one of Scott Powers or L.P. would have been alive to inherit from her had Erika not died on August 23, 2019.**

Erika Zak was, at the time of her death 39 years-old and, according to the life expectancy tables, had a life expectancy of 42.8 years. Her spouse was then 40 years-old and had a life expectancy of 37.1 years. The child was 5 years-old and had life expectancy of 75 years. Life expectancy tables are simply statistical averages. A person might live longer or die sooner than the time

8432774

indicated by those tables. The figures I just mentioned are not controlling but may be considered by you together with the evidence you heard concerning the health, habits, employment and activities of Erika Zak prior to her death and those of Scott Powers and L.P. in determining what their respective life expectancies were at the time Erika Zak died.

**You must decide what portion of her earnings Erika Zak would have spent for the care and support of Scott Powers and L.P. In making your decision, you must consider: the amount Erika Zak earned per year prior to her death; the part of those earnings that Erika Zak contributed to the care and support of each of the distributes and the pattern of those contributions; the position that Erika Zak had with her employer at the time that she died; her prospects for advancement and the probabilities with respect to her future earnings; the risks of her occupation; the condition of her health and the length of time that she would reasonably be expected to continue working. As to this last factor, the work expectancy of Erika Zak was, according to work expectancy tables, 18.7 years. That figure, like the life expectancy figures I mentioned earlier, is only a statistical average and is furnished simply as a guide. In determining what portion of her available earnings Erika Zak would have applied in the future to the care and support of her child, you should consider that Erika Zak was not legally obligated to contribute to the support of any child who became 21 years old. However, Erika Zak could have stopped supporting a child under 21 who became self-supporting or could have decided to continue to support a child who was older than 21. If, on the evidence, you deem it reasonably probable that the child would have become self-supporting prior to age 21, or that Erika Zak would have contributed to the support of L.P. beyond age 21, you may use as the date of termination of support of that child a date which is earlier or later than 21 as you deem proper.**

As I stated before, it is the monetary value of Erika Zak to each of the distributees that you must decide. That value is incapable of exact proof. Taking into account all the factors I have discussed, you must use your own common sense and sound judgment based on the evidence in deciding the amount of the monetary loss suffered by each of the distributees.

**The amount you award for monetary losses sustained by each of the distributees must represent the full amount of such losses without reduction to present value. You must also decide the period of years for which that amount is intended to provide compensation.**

**You will make a separate award for those reasonable expenses for Erika Zak's funeral and burial lot and those that were paid by the spouse for medical aid, nursing and other care required to treat Erika Zak's injuries.**

As to the claim for damages sustained by Erika Zak before she died, which is the second claim I mentioned to you earlier, plaintiff is entitled to recover such sum as you find will fairly and justly compensate for Erika Zak's pain and suffering during such time as she was conscious from the moment of injury to the moment of death. Conscious pain and suffering means pain and suffering of which there is some level of awareness by Erika Zak. In addition, plaintiff is entitled

8432774

to recover those reasonable expenses that were paid or incurred by **Erika Zak and Erika Zak's Estate** for medical aid, nursing and other care required to treat Erika Zak's injuries, **and such amount for loss of earnings as you find Erika Zak would have earned between the date of injury and the date of death had she not been injured**.

**The plaintiff also seeks recovery for the loss of earnings that Erika Zak incurred prior to her death. In deciding the amount, if any, the plaintiff may recover for earnings that Erika lost before her death, you must not deduct from the award any sums on account of federal, state and local income taxes. The law requires me to decide whether any such reduction is warranted.**

If your verdict is in favor of plaintiff, plaintiff will not be required to pay income taxes on the award and you must not add to the award, nor subtract from the award, on account of income taxes.

Your verdict will include answers to the following questions, which will be submitted to you in writing:

1. State the total amount of monetary loss, if any, to **each of Scott Powers and** L.P. resulting from Erika Zak's death. **Monetary loss for Scott Powers and L.P. includes loss of the portion of Erika's earnings that she would have spent for the care and support of Scott and L.P., the amount Erika would have increased her Estate from her earnings and thus added to the amount that would have been inherited from her, and the services she would have performed for her spouse and child in the care and management of the family home. For L.P.,** this monetary loss should include the deprivation of the intellectual, moral and physical training and education that Erika Zak would have given.

2. **For each person for whom** an award is made in your answer to Question No. 1, state the period of years over which the amount awarded for such monetary loss is intended to provide compensation.

**3. State the amount awarded, if any, for the following items of damage incurred or paid by Erika Zak's spouse:**

**(a) Medical expenses;**

**(b) Nursing and other expenses;**

**(c) Funeral expenses, including any burial lot.**

4. State the amount awarded for the following items of damage sustained before Erika Zak's death, if any, **incurred by Erika Zak prior to her death or for which Erika Zak's estate is responsible**:

8432774

(a) Medical expenses;

**(b) Nursing and other expenses;**

**(c) Loss of earnings/Impairment of earning ability;**

(d) Pain and suffering of Erika Zak from the moment of physical injury to the moment of death;

**(e) Funeral expenses, including a burial lot.**

If you decide not to make an award as to any item, you will insert the word "none" as to that item.

### Plaintiff's Position for his version of 2:320

Plaintiff maintains the elements of damages outlined are appropriate because Plaintiff will present proof of each category of damage at trial. For example, Defendants object that there is no proof of Erika Zak's lost earnings. Plaintiff has provided an expert to opine specifically on Erika Zak's lost earnings and the amount of future earnings that would be available for the care and support of her distributees. This expert's testimony is the subject of Defendants Motion in Limine number 6 and Plaintiff would direct this Court to his responses. Dkt. No. 346, 347, 348. Regardless, there is sufficient evidence, namely the testimony of Scott Powers, of the information to be considered by the jury listed in PJI 2:320 such that the jury can calculate these damages.

Plaintiff intends to present evidence of the funeral and burial expenses, medical expenses and other expenses incurred or owed by Plaintiff Scott Powers. And Plaintiff intends to present evidence of "other expenses" incurred or owed by Erika Zak and her estate. These are appropriate measures of damages to include and will be supported by relevant evidence at trial.

Defendants object to the inclusion of the paragraph from PJI 2:320.4 because it is a separate charge. However, the New York Pattern Jury Instruction clearly provides "Where both survival and wrongful death claims are asserted, the jury should be carefully instructed as to which claims on which the jury must and must not consider taxes. In such cases, the following charge should be inserted after the tenth paragraph of the main charge." N.Y. Pattern Jury Instruction, vol. 1B, p. 1073 (2022). It is properly included in the body of PJI 2:320.

Lastly, Defendants object to the inclusion of the verdict sheet language as if it was a charge. But this preview of the verdict sheet language is included in PJI 3:20 and thus properly included here. See N.Y. Pattern Jury Instruction, vol. 1B, p. 1055–1057 (2022). Defendants have misread the first section of this jury charge preview. It is not only an entry for the child, but also the entry for wrongful death damages to Erika Zak's distributees, which includes both Scott Powers and L.P. It reads: "State the total amount of monetary loss, if any, to each of *[list the distributees by name]* resulting from AB's death." *Id.* (emphasis added). This is intended to

request the value of damages for both Scott Powers and L.P. The next sentence merely adds more detail on what is recoverable by L.P.: "[f]or the children of AB this monetary loss should include the deprivation of the intellectual, moral and physical training and education that AB would have given." *Id.* It is clear from the plain language of this entry that it is intended to inquire into damages for all distributees. This is further supported by the fact that this is the only entry for Scott Powers's wrongful death damages. For further edification, Plaintiff's version lists out the elements of recoverable wrongful death damages for Erika's distributees.

### <u>Defendants' Proposed Instruction</u>

As you have heard, the plaintiff, Scott Powers, is the representative of the estate of Erika Zak. Scott Powers makes two claims: the first claim seeks damages on behalf of himself and L.P. resulting from the death of Erika Zak and the second claim seeks damages for the injuries suffered and losses sustained by Erika Zak **and Scott Powers** before she died. You must separately consider each of these claims.

As to the first claim, damages are the amount that you find to be fair and just compensation for the monetary losses resulting from Erika Zak's death to each of the persons for whom this claim is brought. Those persons are: Scott Powers, **her** husband, and L.P., **her** daughter.

Scott Powers claims that these individuals have sustained monetary loss as a result of Erika Zak's death **including loss of support.**

Defendants claim [*state defendants' claims in relation to distributees' alleged pecuniary* loss].

The law limits damages resulting from Erika Zak's death to monetary injuries. You may not consider or make any award for sorrow, mental anguish, injury to feelings, or for loss of companionship. You must decide the monetary losses to Scott Powers and L.P. caused by Erika Zak's death on August 23, 2019. In deciding the amount of monetary losses, you should consider the character, habits and ability of Erika Zak; the circumstances and condition of Scott Powers and L.P.; the age and life expectancy of Erika Zak; the ages and life expectancies of Scott Powers and L.P.; and the value of the intellectual, moral, and physical training, guidance and assistance that Erika Zak would have given the child had she lived.

Erika Zak was, at the time of her death 39 years-old and, according to the life expectancy tables, had a life expectancy of 42.8 years. Her spouse was then 40 years-old and had a life expectancy of 37.1 years. The child was 5 years-old and had life expectancy of 75 years. Life expectancy tables are simply statistical averages. A person might live longer or die sooner than the time indicated by those tables. The figures I just mentioned are not controlling but may be considered by you together with the evidence you heard concerning the health, habits, employment and activities of Erika Zak prior to her death and those of Scott Powers and L.P. in determining what their respective life expectancies were at the time Erika Zak died.

8432774

**Insert here: PJI 2:320.3.  Income Taxes on Lost Earnings. [Only if Plaintiff is allowed to seek recovery of future lost earnings]**

As I stated before, it is the monetary value of Erika Zak to each of the distributees that you must decide. That value is incapable of exact proof. Taking into account all the factors I have discussed, you must use your own common sense and sound judgment based on the evidence in deciding the amount of the monetary loss suffered by each of the distributees.

**Insert here: PJI 2:320.1.  Reduction to Present Value.**  [Under Defendants' position and Plaintiff's objection to this charge in Section IV below.]

As to the claim for damages sustained by Erika Zak before she died, which is the second claim I mentioned to you earlier, plaintiff is entitled to recover such sum as you find will fairly and justly compensate for Erika Zak's pain and suffering during such time as she was conscious from the moment of injury to the moment of death. Conscious pain and suffering means pain and suffering of which there is some level of awareness by Erika Zak. In addition, plaintiff is entitled to recover those reasonable expenses that were paid or incurred by **[to determine which is appropriate: Erika Zak or Erika Zak's Estate]** for medical aid, nursing and other care required to treat Erika Zak's injuries.

**PJI 2:320.4.  Not Consider Taxes.  [Is properly inserted in Plaintiff's version, only if Plaintiff is allowed to seek recovery of pre-death lost earnings].**

<u>**Insert here: modified PJI 2:315. Damages—Derivative Action Re Spouse—Loss of Services**</u>
**If you find that Erika Zak's husband is entitled to recover, you will award the husband damages for the monetary value of lost services and society which you find Erika's husband sustained by the loss of his spouse's services and society.**

**In deciding the amount of such damages, you may take into consideration the nature and extent of Erik Zak's services and society before the injury, including her disposition, temperament, character and attainments; the interest she showed in her home; the social life of her family and in the comfort, happiness, education and general welfare of the members of the family; the services she rendered in superintending the household, training the children, assisting her spouse in the management of the business or affairs in which the spouse was engaged, if any; her acts of affection, love and sexual intercourse and the extent to which the injuries she sustained prevented her from performing such services and providing such society. You will award Erika Zak's husband such an amount based upon the evidence and upon your own observation, experience and knowledge conscientiously applied to the facts and circumstances as in your judgment will compensate him for the monetary value of the lost services and society that you find he has sustained.**

8432774

[PJI 2:320.5] If your verdict is in favor of plaintiff, plaintiff will not be required to pay income taxes on the award and you must not add to the award, nor subtract from the award, on account of income taxes.

Your verdict will include answers to the following questions, which will be submitted to you in writing:

1. State the total amount of monetary loss, if any, to L.P. resulting from Erika Zak's death.  This monetary loss should include the deprivation of the intellectual, moral and physical training and education that Erika Zak would have given.

2. **If** an award is made in your answer to Question No. 1, state the period of years over which the amount awarded for such monetary loss is intended to provide compensation.

**3**. State the amount awarded for the following items of damage sustained before Erika Zak's death, if any:

(a) Medical expenses;

(d) Pain and suffering of Erika Zak from the moment of physical injury to the moment of death;

**(c) Scott Powers' loss of Erika Zak's society from the moment of Erika Zak's physical injury to the moment of death.**

If you decide not to make an award as to any item, you will insert the word "none" as to that item.

## Defendants' Position for their version of PJI 2:320

In the first question, Plaintiff impermissibly seeks to add himself as an item of damages. However, loss of companionship of a deceased spouse is not a pecuniary injury recoverable in a wrongful death.  Defendants have argued this point at length in various portions herein and in Defendants' objections to Plaintiff's proposed jury verdict sheet and respectfully refer the Court to those positions.

The commentary provides that to avoid a double recovery, the pattern charge must be modified to reflect who made or is responsible for the payments.  Therefore, as it concerns medical expenses, it should be instructed as an award to Ms. Zak's spouse vs. her estate. Similarly, itemized verdicts are required in wrongful death actions.  Therefore, any item not applicable to this case and/or not based on the evidence at trial should be removed.  For example, Defendants version removes references to funeral expenses, expenses other than medical expenses, and lost earnings.

Regarding PJI 2:320.3 (Income Taxes on Lost Earnings), this is applicable in wrongful death actions predicated upon medical malpractice where evidence is admissible to establish the

income taxes the decedent would have been required by law to pay.  Since EPTL 5-4.3 applies in this case, if plaintiff is permitted to seek lost earnings under the wrongful death cause of action, this charge should also be given.

Defendants respectfully refer the Court to their request to charge PJI 2:320.1 below, which sets forth the explanation as to why reduction to present value is proper.

As stated in the PJI commentary, it is proper and appropriate to include Plaintiff's individual claim as the surviving spouse for loss of services (PJI 2:315) in this charge.  However, PJI 2:315 must be modified to omit any references to future losses that are not recoverable as a matter of law.  See Sand v. Chapin, 238 A.D.2d 862, 864 (3rd Dept. 1997) (New York does not recognize a common law cause of action on behalf of the surviving spouse for permanent loss of consortium due to the wrongful death of his spouse).

Defendants' note that the language in italics will need to be properly worded based on the actual pecuniary losses permitted to be potentially recoverable.

### III.     Plaintiff's requests to charge, to which Defendants object:

**PJI 1:61. General Instruction—Burden of Proof—In Death Cases**

The burden of proving that the defendants were negligent and that their negligence was a substantial factor in causing the injury and death is upon the plaintiff who is administrator of the estate of Erika Zak. The party having the burden of proof on a particular issue must establish his or her contention on that issue by a fair preponderance of the credible evidence. The credible evidence means the testimony or exhibits that you find worthy of belief. A preponderance means the greater part of such evidence. That does not mean the greater number of witnesses or the greater length of time taken by either side. The phrase fair preponderance of the credible evidence refers to the quality of the evidence, the weight and effect that it has on your minds. The law requires that in order for a party to prevail on an issue on which he or she has the burden of proof, the evidence that supports the claim on that issue must appeal to you as more nearly representing what happened than that opposed to their claim on that issue. If it does not, or if it weighs so evenly that you are unable to say that there is a preponderance on either side, you must resolve the question against the party who has the burden of proof and in favor of the opposing party.

In a death action such as this, however, the plaintiff administrator of Erika Zak's estate is not held to as high a degree of proof as is required of an injured plaintiff who can describe what happened. Thus, you are permitted greater latitude in evaluating such factual issues as the decedent might have testified to had she lived.

If, from all the credible evidence in this case, you conclude that it is more probable than not that the defendants were negligent and that their negligence was a substantial factor causing the injury or death, you will find for the plaintiff on this issue. However, if that is not your decision, or if you find that the evidence is so evenly balanced that you cannot say that the greater weight of the evidence is on either side of these issues, you will find defendants were not at fault.

## Plaintiff's Position

Plaintiff maintains that it is appropriate in this wrongful death case for PJI 1:61 on the burden of proof in death cases to replace the general charge for burden of proof. The comment to PJI 1:61 notes that:

> In fact, in the context of a medical malpractice action, it was held reversible error to charge PJI 1:61 ***in unmodified, "all or nothing" form when the decedent's testimony would necessarily have been limited to his communications with the treating physicians and there were issues in the case***, including whether there was a deviation from the standard of care, about which the decedent could have offered no relevant testimony.

N.Y. Pattern Jury Instruction, vol. 1A, p. 90 (2022) (emphasis added) (citing *Imbierowicz v A.O. Fox Memorial Hosp*., 43 AD3d 503, 841 NYS2d 168 (N.Y. App. 3d Dept 2007)). Defendants do not and cannot offer support for their contention that the death-specific charge is improper. To the extent Defendants argue that the death-specific charge should be used, but modified, they are also incorrect.

In a wrongful death action, "a plaintiff is not held to as high a degree of proof of the cause of action as where an injured plaintiff can himself describe the occurrence." *Noseworthy v. New York*, 298 NY 76, 80 NE2d 744 (N.Y. 1948). In *Imbierowicz v A.O. Fox Memorial Hosp*., the decedent died after six days in the hospital. 43 AD3d at 504. The so-called *Noseworthy* rule, which permits the jury greater latitude in inferring negligence in cases where the injured person is deceased, was improper in *Imbierowicz* because the "decedent's testimony of relevant facts would be limited to his or her communications with the treating physicians" and thus there were no "issues about which decedent could have offered no relevant testimony." *Id*. at 507.

Instead, the *Noseworthy* instruction is appropriate in this case. Unlike the decedent in *Imbierowicz,* Erika Zak lived another two and one-half years after the injury caused by Defendants. She could have offered relevant testimony on every issue of this case, including causation and damages. The relevant testimony she would have to offer is not limited to her communications with treating physicians. Because Erika Zak is dead, she will not be at trial to discuss this relevant testimony. Plaintiff is not held to as high a degree of prove because Erika Zak is not here to describe the occurrence herself. This is exactly the set of fact for which *Noseworthy* is intended. Thus, not only is the death-specific burden of proof charge appropriate, but it is appropriate in its whole and unmodified form.

The only other changes Plaintiff made to this charge was to remove reference to Defendants' contributory-negligence burden, as that affirmative defense has been dismissed with prejudice. Dkt. No. 201.

## Defendants' Position and Objections

In this medical malpractice/wrongful death action, where it is alleged that the Defendants negligently performed an ablation procedure resulting in Ms. Zak's injuries and subsequent

8432774

death, Plaintiff should not be permitted to the reduced burden of proof under PJI 1:61. Charging PJI 1:61 would improperly permit the jury greater latitude in inferring medical negligence from all the evidence and could result in reversible error.

Contrary to Plaintiff's contention, Imbierowicz v. A.O. Fox Mem. Hosp., 43 A.D.3d 503 (3rd Dept. 2007) is directly analogous to this case. In Imbierowicz, the Court held:

> Where, as here, a decedent's testimony of relevant facts would be limited to his or her communications with the treating physicians, the trial court should not give an "all or nothing" charge as set forth in [PJI] 1:61 … [The] instruction … likely led the jury to conclude that plaintiff had a lesser burden of proof as to negligence, including whether there was a deviation from the standard of care and other issues about which decedent could have offered no relevant testimony. Accordingly, the judgment must be reversed and the matter remitted for a new trial as to the liability of [defendants].

43 A.D.3d at 507.

Plaintiff argues that because Ms. Zak lived 2.5 years after the treatment at issue she had relevant testimony on every issue of the case, including causation and damages. However, this argument is misguided on the grounds that: (1) the length of time a plaintiff-decedent lived after the treatment at issue is irrelevant; (2) Ms. Zak could not have offered any relevant testimony on the medical issues of standard of care and causation that require expert medical opinion; (3) Plaintiff has identified and deposed numerous witnesses on the issue of alleged damages; (4) Plaintiff ignores the fact that the consent discussion at issue with Dr. Sofocleous was audio-recorded; and (5) Plaintiff ignores that he has multiple witnesses to testify as to Ms. Zak's interactions with Dr. Sofocleous.

As in Imbierowicz, the only testimony of relevant facts concerning alleged negligence would be limited to Ms. Zak's discussions with her treating physicians leading up to, and during, the treatment at issue, which is insufficient to invoke a reduced burden of proof under PJI 1:61 in this medical malpractice action. See also Feltus v. Staten Is. Univ. Hospital, 285 A.D.2d 445, 447 (2d Dept. 2001) (affirming denial of plaintiff's request to charge PJI 1:61 because the plaintiff "failed to show that there is any factual testimony to which the decedent could have testified which would have been relevant on the issue of the defendants' liability"); Bin Xin Tan v. St. Vincent's Hosp., 294 A.D.2d 122, 123 (1st Dept. 2002) (affirming plaintiff not entitled to PJI 1:61 charge because "The decedent could not have testified concerning the cytologist's alleged misdiagnosis or whether [defendants] should have conducted a tissue biopsy. Furthermore, any testimony that the decedent might have given concerning his general health, what he was told about the condition of his liver, and the circumstances of his consent to the resection would have been irrelevant to the liability issues presented at trial.").

Moreover, as it concerns the claim of lack of informed consent, Plaintiff produced the audio recordings of Ms. Zak's visits with her doctors at Memorial on March 22, 2017, the date of the consent visit at issue. In addition, Ms. Zak's sister-in-law, Chloe Metz, was present with Ms.

8432774

Zak during the March 22, 2017 visits and testified as to the discussions had. Plaintiff and/or Plaintiff's brother, Stephen Powers, were also present with Ms. Zak when she met with Dr. Sofocleous previously and had a prior ablation with him and they both have testified as to those interactions. Plaintiff and his brother Stephen were also present and spoke with Dr. Sofocleous on the day of the ablation at issue. Therefore, had Ms. Zak been alive to testify, there are no factual issues to which she could have testified to that could alter the outcome in this case.

Accordingly, under the circumstances, Plaintiff cannot claim that he is unable to describe the occurrence at trial. Charging PJI 1:61 would afford Plaintiff a double advantage because he is able to inform the jury of Ms. Zak's various conversations with Dr. Sofocleous and simultaneously receive a reduced burden of proof. PJI 1:61 should only be charged in a case where no one is available to testify on behalf of Plaintiff to describe the occurrence at issue. Since audio-recordings and testimony of Plaintiff and his other family witnesses are available for this exact purpose, there is no justification for charging PJI 1:61.

### PJI 1:78. General Instruction—Stipulation of Facts

You will remember that during the trial the attorneys made a stipulation in which they agreed to certain facts. This means that there is no dispute as to these facts and that these facts are established for the purposes of this case. You must consider the agreed facts along with all of the other evidence presented and give the agreed facts such weight as you find is appropriate. You will remember that the following facts were agreed to:

1. Erika Zak died on August 23, 2019.
2. Scott Powers is the personal representative of the Estate of Erika Zak.
3. Scott Powers is the legal and natural guardian of L.P.
4. [The parties may stipulate to further facts.]

### Plaintiff's Position

Plaintiff maintains that this charge is relevant to this case because the stipulations are the direct elements of Plaintiff's cause of action. Specifically, Plaintiff's wrongful death action requires him to prove: "(1) the death of a human being, (2) the wrongful act, neglect or default of the defendant by which the decedent's death was caused, (3) the survival of distributees who suffered pecuniary loss by reason of the death of decedent, and (4) the appointment of a personal representative of the decedent." *Chong v. New York City Transit Authority*, 441 N.Y.S.2d 24, 25–26 (N.Y. App. Div. 1981). Thus, the PJI 1:78 instruction is necessary.

### Defendants' Position and Objections

Including PJI 1:78 only serves to invoke emotion and sympathy, which is improper. There is no valid basis to remind the jury that Ms. Zak died, that Plaintiff is the estate representative, and that Plaintiff is the legal guardian of his daughter because these stipulated facts do not assist the jury in their role of determining the wrongful death claim – i.e., whether the claimed negligence caused her death. Ms. Zak's date of death, her estate representative and

her daughter will be listed on the verdict sheet such that this charge is unnecessary and prejudicial.

## PJI 2:10 Common Law Standard of Care—Negligence Defined—Generally

Negligence is lack of ordinary care. It is a failure to use that degree of care that a reasonably prudent person would have used under the same circumstances. Negligence may arise from doing an act that a reasonably prudent person would not have done under the same circumstances, or, on the other hand, from failing to do an act that a reasonably prudent person would have done under the same circumstances.

### Plaintiff's Position

Plaintiff maintains that the charge is necessary. Despite Defendants' claim that only PJI 2:150 is required, the very first sentence of the comment to PJI 2:150 states that PJI 2:10 should proceed PJI 2:150. N.Y. Pattern Jury Instruction, vol. 1B, p. 47–48 (2022) ("The charge should be preceded by a separate charge defining negligence, see PJI 2:10, and followed by a charge on proximate cause, see PJI 2:70").

### Defendants' Position and Objections

Defendants object to PJI 2:10 because it is inapplicable, unnecessary and confusing to charge in this medical malpractice action.  The parties agree that PJI 2:150, which is the standard charge given in a medical malpractice action, will be given to the jury.  PJI 2:150 includes the PJI 2:10 definition of negligence that has been properly modified/adapted to medical malpractice actions to state "negligence of a doctor" and a "reasonably prudent doctor".

PJI 2:10 is used in ordinary negligence actions in that it refers to the "reasonably prudent person" standard.  That standard is inapplicable to this case.  Defendants are not to be judged based upon what a "reasonably prudent person" would have done if confronted with a person in Ms. Zak's condition; Defendants are to be judged according to the standard of care applicable to and as set by the relevant medical community.  Instructing the jury as though this case is based on "ordinary" negligence would undoubtedly confuse the jury and could result in a verdict based on an erroneous application of the law.

## PJI 2:283. Damages—Personal Injury—Increased Susceptibility To Injury

The fact that Erika Zak may have had a physical or mental condition that made her more susceptible to injury than a normal healthy person does not relieve the defendants of liability for all injuries sustained as a result of their negligence. The defendants are liable even though those injuries are greater than those that would have been sustained by a normal healthy person under the same circumstances.

8432774

**Plaintiff's Position**

Plaintiff maintains that PJI 2:283 is highly relevant to this case. One of Defendants' main defense in this case was the Erika Zak only suffered injuries from the ablation procedure because she was more susceptible to injury due to the chemotherapy she received through her hepatic arterial infusion pump (HAI/FUDR). However, under New York law defendants are liable for injuries caused by their negligence even if the extent of the injuries was greater than those that would have been sustained by a normal healthy person. "A wrongdoer is chargeable for all the harm and suffering that his or her negligent act causes the plaintiff, even though the plaintiff's injuries are increased by a predisposition or weakness." N.Y. Pattern Jury Instruction, vol. 1B, p. 972 (2022) (citing *Owen v. Rochester-Penfield Bus Co*., 304 NY 457, 108 NE2d 606 (N.Y. 1952)). Despite Defendants' claims that Drs. Sofocleous and Kemeny did not know at the time of the ablation procedure that Erika's HAI/FUDR treatment would predispose her to injury, [t]he pre-existing physical condition of the plaintiff does not have to be known to the defendant in order for the plaintiff to recover." *Id.*

Defendants attempt to differentiate between a "ongoing treatment" and a "physical condition" is a matter of semantics. Plaintiff has pled and proved Erika's ongoing treatment. Their experts have opined and testified that Erika Zak's ongoing treatment created a physical condition that made her more prone to injury. Defendants argue that Erika Zak was more susceptible to injury than a normal healthy person. They now attempt to improperly use this argument as a shield to liability by omitting this charge. This is contrary to New York law.

**Defendants' Position and Objections**

PJI 2:283, which allows the jury to consider whether a latent condition was triggered or activated by the alleged negligence, is not applicable in this case and would be error to charge. Plaintiff refers to Ms. Zak's FUDR chemotherapy that she received in her liver through a HAI pump for treatment of her metastatic cancer that extended her life. This was ongoing treatment Ms. Zak received, not a physical condition that she had, prior to the ablation at issue. See Bolowske v. Eastman Kodak Co., 288 A.D.2d 851, 852 (4th Dept. 2001) (PJI 2:283 appropriate where there was expert testimony that preexisting spondylolisthesis condition was asymptomatic until the motor vehicle accident).

Plaintiff has not claimed any condition that was exacerbated by the alleged malpractice. Plaintiff's position that this is just semantics is baseless. At best, Plaintiff's position as stated herein is that Defendants would be liable for precipitating or activating FUDR/HAI pump chemotherapy caused by the alleged negligent ablation. First, such a claim makes no sense; second, plaintiff has not advanced such a claim nor will evidence at trial support it. See Rivera v. Kolsky, 164 A.D.3d 626, 628 (2d Dept. 2018) ("Increased susceptibility to injury must be affirmatively pleaded and proven before recovery therefor can be allowed."); Rodgers v. NYC Transit Authority, 70 A.D.3d 917, 921 (2d Dept. 2010) (reversing judgment and remitting matter for a new trial, in part, on ground that charging PJI 2:283 was erroneous and prejudicial to the

8432774

defendants because plaintiff failed to allege he sustained an aggravation of any preexisting degenerative disc condition).

This charge is also inapplicable and confusing because it refers to a "normal healthy person", which is a fact not present in this case.  Ms. Zak had no condition that made her more susceptible to any injury from treatment of her metastatic cancer in her liver with FUDR/HAI pump treatment than any other cancer patient receiving FUDR/HAI pump treatment in the liver. Accordingly, plaintiff's request to charge 2:283 should be denied.

Finally, to the extent the Court grants Plaintiff's request to charge PJI 2:283, Plaintiff would have to stipulate that the FUDR/HAI pump caused damage and made her susceptible to injury from other treatment.

## PJI 2:284. Damages—Personal Injury—Emotional Distress and Physical Consequences Thereof

If you find that the plaintiff is entitled to recover from the defendants, you must also include in your verdict damages for any of Erika Zak's mental suffering, emotional and psychological injury and any physical consequences resulting from the emotional distress caused by the wrongful act of the defendants.

### Plaintiff's Position

Plaintiff maintains that this charge is appropriate because there is ample evidence of Erika Zak's emotional distress resulting from her injuries. "Where there is evidence of emotional reaction to physical injury, PJI 2:284 must be charged." N.Y. Pattern Jury Instruction, vol. 1B, p. 958 (2022). Plaintiff further maintains that the use of Erika Zak's name is appropriate in this case in which there is a plaintiff appearing in multiple roles, a decedent, and multiple defendants including multiple tortfeasors to specify plaintiff, decedent, and defendants by name where applicable.

### Defendants' Position and Objections

Defendants object to the charge of PJI 2:284 for damages of emotional distress as not applicable in this survival action brought on behalf of Ms. Zak's estate.  Her pre-death losses include conscious pain and suffering that is provided for in PJI 2:320.  Plaintiff's re-wording of PJI 2:284 ("for any **of Erika Zak's** mental suffering") in an attempt to fit this action demonstrates why this charge is not applicable to this case and should not be charged.

## PJI 2:285. Damages—Personal Injury—Expenses Incurred

If you decide for plaintiff on the question of liability, plaintiff will be entitled to recover the amount of reasonable expenditures for medical services and medicines incurred by Erika Zak

before her death, including physician's charges, nursing charges, hospital expenses, diagnostic expenses and X-ray charges. Thus, you will include in your verdict the amount that you find from the evidence to be the fair and reasonable amount of the medical expenses necessarily incurred as a result of Erika Zak's injuries.

In your verdict you will state separately the amount awarded for medical expenses incurred by Erika Zak before her death. Do not state an amount per year but only a total amount for the entire period.

### Plaintiff's Position

Plaintiff maintains that PJI 2:285 is necessary to define recoverable medical expenses for the jury. While PJI 2:320 "Damages—Actions for Wrongful Death and Conscious Pain and Suffering" states that medical expenses are recoverable, it does not provide the full definition of medical expenses provided by PJI 2:285.

### Defendants' Position and Objections

Plaintiff's re-wording of PJI 2:285 in an attempt to fit this action demonstrates why this charge is not applicable to this case and should not be charged.  Plaintiff refused to allow Defendants to bold the language above to reflect the changes to the charge made by Plaintiff, therefore, it is re-provided below.  The instruction for awarding any medical expenses is appropriately charged in PJI 2:320.

[Plaintiff's version of PJI 2:285] If you decide for plaintiff **[ ]** on the question of liability, **plaintiff** will be entitled to recover the amount of reasonable expenditures for medical services and medicines **incurred by Erika Zak before her death**, including physician's charges, nursing charges, hospital expenses, diagnostic expenses and X-ray charges. Thus, you will include in your verdict the amount that you find from the evidence to be the fair and reasonable amount of the medical expenses necessarily incurred as a result of **Erika Zak's** injuries.

In your verdict you will state separately the amount awarded for medical expenses **incurred by Erika Zak before her death**. Do not state an amount per year but only a total amount for the entire period.

### PJI 2:305. Damages—Personal Injury—Subsequent Injury—Medical Malpractice

If you find that the defendants were negligent and that defendants' negligence caused Erika Zak's injury, defendants are responsible for the injury and the pain and suffering caused by defendants' negligence. Defendants are also liable for any aggravation of the injury and for any additional pain and suffering caused by any negligence or lack of skill of any doctor who treated Erika Zak for the original injury.

8432774

## Plaintiff's Position

Plaintiff maintains that PJI 2:305 is necessary for this case and there is a factual basis in the record for its inclusion. Erika Zak lived for two and one-half years after the original injury caused by Defendants, the ablation procedure. She was subjected to many hospitalizations, procedures, and surgeries to address her original injury, including the embolization of her ruptured hepatic artery and the liver transplant surgery which she did not survive. For example, the ablation procedure destroyed her bile duct such that it was no longer draining bile into her intestines. To manage this, Erika had multiple drains placed both internally and externally to collect the accumulating bile. These drains were replaced regularly as they often bled and became infected. It is conceivable that each time these drains became infected, leaked bile, and were replaced her bile duct injury progressed. This is just one example of the many instances in the evidentiary record that provide a factual basis for this charge.

Defendants are liable for any aggravation of the original injury. The jury must be informed that the Defendants are liable for any subsequent injury, pain, and suffering Erika Zak endured during treatments necessitated by the original injury. This is true even in the event the jury ascribes any negligence or lack of skill to Erika's later treatments. *See* N.Y. Pattern Jury Instruction, vol. 1B, p. 1023 (2022).

## Defendants Position and Objections

Defendants object to PJI 2:305 because there is no claim of any subsequent negligent medical treatment.  Plaintiff's claim is that the ablation caused Ms. Zak's injuries, including her subsequent medical care to treat those alleged injuries and death.  There is no claim that the injuries from the ablation were aggravated by subsequent malpractice.  Accordingly, there is simply no basis to charge PJI 2:306.  See Lebron v. St. Vincent's Hosp. and Medical Center, 261 A.D.2d 246, 246 (1st Dept. 1999) (affirmed rejection of charging PJI 2:305 because there was no factual basis for the charge and no claim was ever raised by any of the parties); Dennis v. Massey, 134 A.D.3d 1532, 1533-34 (4th Dept. 2015) (affirmed rejection of request to charge PJI 2:305 because no factual basis for it).

## PJI 2:315. Damages—Derivative Action Re Spouse—Loss of Services

If you find that Erika Zak's husband is entitled to recover, you will award the husband damages for the monetary value of lost services and society which you find Erika's husband sustained by the loss of his spouse's services and society.

In deciding the amount of such damages, you may take into consideration the nature and extent of Erik Zak's services and society before the injury, including her disposition, temperament, character and attainments; the interest she showed in her home; the social life of her family and in the comfort, happiness, education and general welfare of the members of the family; the services she rendered in superintending the household, training the children, assisting her spouse in the management of the business or affairs in which the spouse was engaged, if any; her acts of

affection, love and sexual intercourse and the extent to which the injuries she sustained prevented her from performing such services and providing such society. You will award Erika Zak's husband such an amount based upon the evidence and upon your own observation, experience and knowledge conscientiously applied to the facts and circumstances as in your judgment will compensate him for the monetary value of the lost services and society that you find he has sustained and is reasonably certain to sustain in the future by reason of his spouse's inability to perform such services and provide such society as a result of her injuries. Your award, if any, for loss of spousal services and society will be in separate amounts for past and future damages. In addition, you will state the number of years over which your award for future damages is meant to cover.

### Plaintiff's Position

Plaintiff maintains that PJI 2:315 is necessary as it defines a different category of damages than those described in PJI 2:320. PJI 2:320 provides the damages that Erika Zak's distributees are owed as the result of her wrongful death. PJI 2:315 defines the damages Plaintiff Scott Powers is owed as the result of his spouse's injuries. The damages description in PJI 2:320 does not include the damages defined by PJI 2:315, such as damages for loss of consortium (affection, love, sexual intercourse, etc.) recoverable only by Plaintiff Scott Powers. *See* N.Y. Pattern Jury Instruction, vol. 1B, p. 1039–40 (2022).

Put another way, PJI 2:320 allows Erika's minor daughter, L.P., (and not Plaintiff Scott Powers) to recover the "value of the intellectual, moral, and physical training, guidance and assistance that Erika Zak would have given the child had she lived." This is unlike PJI 2:315, which allows Plaintiff Scott Powers (but not L.P.) to recover "the services [Erika] rendered in superintending the household, training the children."

### Defendants' Position and Objections

Defendants object to PJI 2:315 because Plaintiff is attempting to seek an award of future damages that are not recoverable in this action.  Plaintiff, as the husband of Ms. Zak, is entitled to seek damages for his loss of consortium from the date of the alleged negligence, April 10, 2017, until Ms. Zak's death, on August 23, 2019.   Plaintiff's position demonstrates that they are seeking to recover loss of consortium damages into the future, which is not recoverable as a matter of law.  See Walsh v. Armstrong World Industries, Inc., 700 F.Supp. 783, 784 (S.D.N.Y. 1988) (noting that the New York Court of Appeals construed the statutory limitation of wrongful death damages to exclude loss of consortium damages).

Defendants maintain that a modified charge of PJI 2:315 is appropriate to include in the charge of PJI 2:320.  See Defendants' proposed language for PJI 2:320.

**PJI 2:316. Damages—Derivative Action Re Spouse— Expenses Incurred**

If you find that the plaintiff Scott Powers is entitled to recover, you will award him damages for the expenses you find he has incurred for medical, hospital, nursing and household services and supplies made necessary as a result of Erika Zak's injuries. You will award such amounts as you find to be the fair and reasonable value of the services and supplies required to date.

### Plaintiff's Position

With regard to PJI 2:316 "Damages—Derivative Action Re Spouse— Expenses Incurred," Plaintiff maintains that PJI 2:320 does not define the expenses owed to Plaintiff Scott Powers as the result of his derivative action, expect that it adds "funeral and burial lot" expenses as another category of damages. PJI 2:315 and PJI 2:316 are combined as instructed by the New York Pattern Jury Instruction. N.Y. Pattern Jury Instruction, vol. 1B, p. 1040 (2022) ("Where there are claims for both loss of services and expenses, PJI 2:315 and PJI 2:316, should be combined.") Plaintiff, Scott Powers, brings a derivative action in his individual capacity. Defendants claim that this is only permitted in "straight medical malpractice" actions is unsupported. Plaintiff is entitled to damages he incurred as the result of his wife's injuries that were caused by Defendants' negligence, whether she succumbed to those injuries or not.

### Defendants' Position and Objections

PJI 2:316 is applicable only in a straight medical malpractice action where the plaintiff was the patient and is still alive and the spouse is named as a co-plaintiff.  Plaintiff's proposed re-wording of PJI 2:316 ("as a result of **Erika Zak's** injuries) demonstrates how this charge is not applicable in a medical malpractice/wrongful death action.  The appropriate instruction for awarding any expenses incurred is included in PJI 2:320.  Therefore, in order to avoid impermissible double recoveries, PJI 2:316 should not be charged.

**PJI 2:320.2 Loss of Services of Homemaker**

In fixing the value of Erika Zak's services you must take into consideration the circumstances and condition of her spouse and child; the services she would have performed for her spouse and child in the care and management of the family home, finances and health; and the intellectual, moral and physical guidance and assistance she would have given the child had she lived. In fixing the monetary value of Erika Zak to the survivor and child you must consider what it would cost to pay for a substitute for her services, considering both Erika Zak's age and life expectancy and the age and life expectancy of the survivor and of the child.

### Plaintiff's Position

Plaintiff maintains that addition of PJI 2:320.2 is necessary because, while PJI 2:320 describes household services as an available category of damages, it does not inform the jury that they "must consider what it would cost to pay for a substitute for her services, considering both

8432774

Erika's age and life expectancy and the age and life expectancy of the survivor and of each of the children."

**Defendants' Position and Objections**

Defendants object to PJI 2:320.2 because there is no evidence that Ms. Zak was a "homemaker" as contemplated under this charge.  Indeed, Plaintiff is seeking lost earnings claiming Ms. Zak would have been a full-time wage earner outside the home.  This charge is therefore inapplicable to this case and should not be charged.

**IV.   Defendants requests to charge, to which Plaintiff objects:**

**PJI 1:23. Burden of Proof**

**Defendants' Position**

Since Plaintiff is not entitled to a *Noseworthy* instruction under PJI 1:61, the proper charge for burden of proof is PJI 1:23.  See Defendants' objections to Plaintiff's request to charge PJI 1:61, supra.

**Plaintiff's Position**

Plaintiff objects to the use of PJI 1:23. New York's Pattern Jury Instruction provides that PJI 1:61 should be used in death cases because "[o]n some issues the burden may differ from the general rule here stated." N.Y. Patter Jury Instruction, vol. 1A, p. 59 (2022). And in this case the burden does in fact differ from the general rule. Specifically, Plaintiff is entitled to the *Noseworthy* instruction as described in his response to Defendants' objection to PJI 1:61 above.

**Special Instruction No. 1.  Bad Result Does Not Warrant Inference of Negligence**

The law does not hold a defendant liable merely because of a bad result that may occur.  The mere fact of a bad result does not warrant the inference of negligence.  The defendant is to be judged on the facts as they existed at the time of the incident and not on hindsight and in light of subsequent events.

**Defendants' Position**

Given the various positions plaintiff is anticipated to take at trial, this special instruction is warranted under the circumstances.  See Fernandez v. Moskowitz, 85 A.D.3d 566, 568 (1st Dept. 2011) (hindsight reasoning is insufficient); Brown v. Bauman, 42 A.D.3d 390, 392 (1st Dept. 2007) (a "reasoning back" from the fact of injury to find negligence is hindsight reasoning that is insufficient); Lederman v. Lawrence Hosp., 202 A.D.2d 198 (1st Dept. 1994) (plaintiff's expert's contention based on mere hindsight was unable to establish liability); Henry v. Bronx

Lebanon Med. Ctr., 53 A.D.2d 476, 480-81 (1st Dept. 1976) ("It seems to us unfair to fasten liability on these physicians based largely, if not entirely, on [plaintiff expert's] hindsight judgments as to what should have been done.  The defendants are to be judged on the facts as they existed when [the treat at issue occurred] and not in retrospect and in light of subsequent events.").

### Plaintiff's Position

This instruction is inappropriate and only serves to interject bias against the plaintiff. Plaintiff's claims against Defendants are based on their decisions before and during the subject procedure. There is no evidence that any of Plaintiff's positions are based on hindsight. This special instruction is not recommended by the New York Pattern Jury instructions for medical malpractice and wrongful death. And the cases cited by Defendants as support are inapposite. As a primary note, all but one of the cited cases are based on summary judgment decisions. *See Fernandez v. Moskowitz*, 85 A.D.3d 566, 567–68, 925 N.Y.S.2d 476 (N.Y. App. 1st Dept. 2011); *Brown v. Bauman*, 42 A.D.3d 390, 391–92, 841 N.Y.S.2d 229 (N.Y. App. 1st Dept. 2007); *Rodriguez v. Montefiore Medical Center*, 28 A.D.3d 357, 357–58, 814 N.Y.S.2d 59 (N.Y. App. 1st Dept. 2006); *Lederman v. Lawrence Hospital*, 202 A.D.2d 198, 198–201, 607 N.Y.S.2d 948 (N.Y. App. 1st Dept. 1994). The plaintiffs in these cases failed to provide a prima facie case of causation, relying only on the outcome to infer negligence. Thus, their cases did not survive summary judgment. That is unlike this case, in which Plaintiff has already defeated Defendants' summary judgment claim based on lack of causation. *See* Dkt. No. 248.

Likewise in <u>*Henry v. Bronx-Lebanon Medical Center*</u>, the jury's verdict was against the greater weight of the evidence because the only evidence that the physicians acted outside of the standard of care in delivering a child was the poor outcome of that delivery. 53 A.D.2d 476, 480 385 N.Y.S.2d 772 (N.Y. 1st Dept. 1976). Here, Defendants moved for summary judgment on the lack of "causal nexus" between the ablation and the injury. Dkt No. 229. The Court found that there was enough evidence of causation to establish a genuine issue of material fact. Dkt No. 248.

<u>Additionally, this charge is duplicative of the instruction contained within PJI 2:150:</u>

By undertaking to perform a medical service, a doctor does not guarantee a good result. The fact that there was a bad result to the patient, by itself, does not make the doctor liable. The doctor is liable only if he was negligent. Whether the doctor was negligent is to be decided on the basis of the facts and conditions existing at the time of the claimed negligence.

<u>N.Y. Pattern Jury Instruction, vol. 1B, p. 46–47 (2022). Defendants' attempt to reiterate the charge with an improper emphasis on "hindsight" is an attempt to confuse and mislead the jury. There is no basis for further admonishing the jury that negligence cannot be implied solely from</u>

a bad outcome, because if Plaintiff's evidence was based solely on hindsight, he would not have survived summary judgment.

**Special Instruction No. 2.  Verdict Cannot Be Based on Speculation**

Your verdict must be based solely on the evidence presented during this trial.  In reaching your conclusions, you are not permitted to speculate or guess.  The plaintiff bears the burden to establish that the defendant departed from the standard of care and thereby caused the claimed injuries.  Where there are several possible causes of an injury, you are not permitted to find in favor of the plaintiff absent competent expert testimony establishing the elements of both departure and causation.

## Defendants' Position

This special instruction is necessary to instruct the jury that a verdict cannot be based on mere speculation or guesswork, especially where there are several possible causes for the injuries alleged in this case.  "A jury verdict must be based on more than mere speculation or guesswork.  Where there are several possible causes of an injury, for one of which the defendant is not responsible, and it is just as probable that the injury was the result of one cause as the other, the plaintiff cannot recover without proving the injury was sustained wholly or in part by a cause for which the defendant was responsible."  Howerter v. Dugan, 232 A.D.2d 524, 525 (2d Dept. 1996).  See also Shallash v. New Is. Hosp., 66 A.D.3d 988, 992 (2d Dept. 2009) (affirmed judgment as a matter of law in favor of defendants where opinions of plaintiffs' medical experts were based on sheer speculation).  Despite Plaintiff's contention, there are no medical issues in this case that can be decided without expert testimony (i.e., common knowledge).

## Plaintiff's Position

This special instruction is a clear misstatement of the law. Although expert testimony is generally required in a medical malpractice case, New York law is clear that there may be issues for which no expert testimony is needed because they are "easily determinable by a trier of fact evaluating the evidence based on common knowledge." *Kerker v. Hurwitz*, 163 A.D.2d 859, 859–60, 558 N.Y.S.2d 388 (N.Y. App. Div. 4th Dept. 1990). Even the case cited by Defendants does not support their position. *Howerter v. Dugan*, provides that causation must be established by "some competent evidence, *such as expert testimony*." 232 A.D.2d 524, 525, 649 N.Y.S.2d 32 (N.Y. App. 2nd Dept. 1996) (emphasis added). The other case cited by Defendants has no relevancy to this question. The court in *Shallash v. New Island Hospital* awarded judgment as a matter of law to defendants when the verdict was unsupported by legally sufficient evidence because plaintiffs' experts failed to prove a deviation from the standard of care. 66 A.D.3d 988, 992, 887 N.Y.S.2d 641 (N.Y. App. 2nd Dept. 2009). This does not foreclose the possibility that other cases may have other forms of competent evidence.

While Plaintiff will present competent expert testimony on the departure from the standard of care and causation, it is an error to instruct the jury that they are not permitted to find for Plaintiff in the absence of such testimony.

**PJI 2:280.2. Income Taxes**

<u>**Defendants' Position**</u>

This charge is appropriate where Plaintiff is seeking damages as to causes of action for medical malpractice and lack of informed consent, and not subject to the wrongful death provisions of EPTL 5-4.3.

<u>**Plaintiff's Position**</u>

Plaintiff object to the inclusion of this jury instruction because the identical language is already included in the body of his version of PJI 2:320 in section II above as directed by PJI 3:20.5. N.Y. Pattern Jury Instruction, vol. 1B, p. 1073–74 (2022).

**PJI 2:320.1.  Reduction to Present Value.**  [To be inserted in place of the 8th paragraph of 2:320]

<u>**Defendants' Position**</u>

The commentary provides that for medical malpractice actions, PJI 2:320 may be modified to instruct the jury to reduce to present value the award for future damages and to eliminate the instruction to specify the period of years for which an award of future damages is intended to provide compensation.  Contrary to Plaintiff's position below, the PJI commentary provides that whether to reduce monetary losses to present value is to be decided by the Court where the parties cannot agree.  Since it is well-known that not reducing future economic awards to present value amounts to a windfall, since Plaintiff's expert economist provided a report discounted to present value, and since expert testimony is not relevant to determining a proper award for L.P., there is no valid basis to oppose charging the jury to reduce any monetary losses awarded to present value.

<u>**Plaintiff's Position**</u>

Plaintiff object to the inclusion of this jury instruction as it is improper. As the New York Pattern Just Instruction provides:

> [T]he final sentence of CPLR 4111(e) (former CPLR 4111(f)), which was not amended in 2003, still requires an instruction that the jury must "award the full amount of future damages, as calculated, without reduction to present value," *see Toledo v. Iglesia Ni Christo*, 18 NY3d 363, 939 NYS2d 282, 962 NE2d 773 (2012). If, as the language suggests, that sentence is applicable to wrongful death actions based on medical, dental and podiatric malpractice, then any consideration of reduction to present value is precluded.

N.Y. Pattern Jury Instruction, vol. 1B, p. 1059–61 (2022). Therefore, the use of PJI 2:320.1 is only utilized "[w]here the parties have agreed or the court has determined that reduction to present value is appropriate **and where relevant expert testimony has been offered**." *Id.*

8432774

(emphasis added). The parties have not agreed to reduce the award to present value, the Court has not ordered the reduction to present value, and no expert testimony will be offered at trial to reduce the award to present value.


Dated: September 1, 2022

Respectfully submitted,

HENDLER FLORES LAW, PLLC

By: _____

Scott M. Hendler
shendler@hendlerlaw.com
Laura A. Goettsche
lgoettsche@hendlerlaw.com
901 S. MoPac Expressway
Bldg. 1, Suite #300
Austin, Texas 78746
Tel: (512) 439-3200
Fax: (512) 439-3201
**ATTORNEYS FOR PLAINTIFF**



KAUFMAN BORGEEST & RYAN LLP

/s/ Betsy D. Baydala

_____

Betsy D. Baydala
Andrew S. Kaufman
*Attorneys for Defendants*
120 Broadway, 14th Floor
New York, NY 10271
Telephone: (212) 980-9600
Fax: (212) 980-9291
bbaydala@kbrlaw.com
akaufman@kbrlaw.com

8432774

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that, on September 1, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record for Defendants.

_____
Scott M. Hendler

8432774