UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Scott Powers, individually, as Representative of the Estate of Erika Zak, and as the natural guardian of L.P., a minor,<br><br>       Plaintiff,<br> vs.<br>Constantinos Sofocleous, and Memorial Sloan Kettering Cancer Center,<br><br>       Defendants. | Case No.:<br>1:20-cv-02625 (LGS) |

## JOINT PROPOSED *VOIR DIRE*

In accordance with the Individual Rules of Practice of Judge Schofield, and the Scheduling Order dated March 28, 2022, the parties respectfully request that all prospective jurors be asked the following questions during jury selection:

1. **Statement of the Case**

   a. **Plaintiff's Version**

   Scott Powers is the plaintiff in this case. Memorial Sloan Kettering Cancer Center and its employee Dr. Constantino Sofocleous are the named defendants in this case. Scott Powers brings this case against the defendants as the court-appointed representative of the estate of his wife, Erika Zak, who died on August 23, 2019. He also brings this case as the natural guardian of his and Erika's minor daughter, L.P., and on his own behalf as Erika's surviving spouse.

   This is a medical malpractice and wrongful death case arising from a liver ablation procedure performed on Erika Zak by Dr. Constantinos Sofocleous as an employee of Memorial Sloan Kettering Cancer Center ("MSK"). Scott Powers alleges that Dr. Sofocleous committed medical malpractice by failing to use his best judgment in deciding to perform the liver ablation

procedure when he should not have done so, and by failing to use ordinary and reasonable care, diligence, or skill in the performance of the ablation to perform the procedure safely.

Scott Powers also alleges that Dr. Sofocleous failed to secure Erika Zak's informed consent under New York law before performing the procedure and that Erika would not have consented to the procedure if Dr Sofocleous had adequately informed her. Scott Powers claims that another MSK employee, Dr. Nancy Kemeny, committed medical malpractice by failing to consider a reasonable alternative treatment, namely, immunotherapy, for Erika Zak. Scott Powers also claims that Drs. Sofocleous and Kemeny committed medical malpractice by failing to confer with other doctors at a multiple disciplinary tumor board on Erika's case before deciding to perform the procedure. Scott Powers alleges that the injuries his wife suffered from this procedure caused her death. Lastly, Scott Powers alleges that the injuries his wife suffered from this procedure caused her death.

### i. Defendants' Objections

The purpose of the statement of the case is the give the jury a general idea about the case and not to detail the specifics of all the claims at issue.  It is sufficient to indicate there is a lack of informed consent claim without detailing the particulars about the claim.  Dr. Kemeny is not a defendant in this case and there were no claims pled against her.  Dr. Kemeny did not perform a procedure causing the injuries alleged and should not be included in the statement of the case.  See Defendants' Motion *in limine* No. 7 (Docs. 301-302).

### b. Defendants' Version

This is a case involving a claim that Memorial Sloan Kettering Cancer Center and its physician, Dr. Constantinos Sofocleous, negligently performed a procedure on Erika Zak to treat metastatic cancer in her liver, resulting in a liver failure and death of Ms. Zak.  It is also claimed

that the procedure was performed without obtaining informed consent. Memorial Sloan Kettering and Dr. Sofocleous deny the allegations and contend that they provided appropriate information concerning the procedure and that the procedure was appropriately performed.

### i. **Plaintiff's Objections**

Plaintiff's first objection is that Defendants' version fails to identify the Plaintiff in the case.

Plaintiff's second objection is stating that Erika Zak had metastatic liver cancer. This is not relevant to the statement of the case or the causes of action the jurors are to decide. This only serves to place the case in a negative context from the outset and risks prejudicing the jury by intimating that Erika was terminally ill when in fact that was not at all the case on the day prior to the ablation.

Plaintiffs' third objection is that Defendants' proposed statement of the case does not inform the jury of all the causes of action in this case. It fails to introduce the jury to Plaintiff's informed consent and wrongful death claims, as well as Plaintiff's medical malpractice claims. The causes of action the Court will instruct the jury to consider on the other hand inform the jury in basic terms what they are here to consider. Knowing the fundamentals of the lawsuit are important for understanding the questions that follow and soliciting the most complete answers from the jury.

Defendants' proposed statement also attempts to limit Plaintiff's medical malpractice cause of action to a single claim. This is a common theme throughout Defendants' jury material. As the New York Pattern Jury Instructions make clear, "[e]ach claimed departure from accepted medical practice should be the subject of a separate jury question." N.Y. Pattern Jury Instruction, Vol. 1B, PJI 2:150, p. 48 (2022) (citing *Steidel v Nassau*, 182 AD2d 809, 582 NYS2d 805 (N.Y. App. 2d

Dept 1992); *Davis v Caldwell,* 54 NY2d 176, 445 NYS2d 63, 429 NE2d 741 (N.Y. 1981); *Harris v Parwez*, 13 AD3d 675, 785 NYS2d 781 (N.Y. App. 3d Dept 2004)). For that reason, Plaintiff provided basic facts on each of the medical malpractice claims, including that Dr. Constantinos Sofocleous committed medical malpractice by failing to use his best judgment when he proceeded with the ablation procedure; Dr. Constantinos Sofocleous committed medical malpractice by failing to use ordinary and reasonable care, diligence, or skill in the performance of the ablation; Dr. Constantinos Sofocleous committed medical malpractice by failing to use his best judgment and failed to use ordinary and reasonable care, diligence, or skill because he did not consult a multidisciplinary tumor board before deciding to proceed with an ablation of lesions on Erika Zak's liver; Dr. Nancy Kemeny committed medical malpractice because she failed to use her best judgment when evaluating Erika Zak for immunotherapy (Pembro) and failed to use ordinary and reasonable care, diligence, or skill by failing to administer Pembro.  and failed to use ordinary and reasonable care, diligence, or skill; and Dr. Nancy Kemeny committed medical malpractice because she failed to use her best judgment because she did not consult a multidisciplinary tumor board regarding the best course to treat the lesion that developed adjacent to the critical structures in Erika Zak's liver.

2. **Knowledge of the Case**

    a. **Plaintiff's version**

    a. Is there anyone on the panel that has heard or read anything about Erika Zak, or her family, or this case?

    b. If so, what have you heard or read?

        i. On August 23, 2019, CNN published a story about Erika Zak entitled "Erika Zak, mom who inspired millions in her fight to get a liver, dies at 39," did any of you read or hear about this?

   ii. On September 18, 2019, The Washington Post published a posthumous letter from Erika Zak entitled "Erika Zak: A posthumous letter to my daughter," did any of you read or hear about this?

   iii. On August 20, 2019, The New York Times published an opinion piece about Erika Zak entitled "She Beat Cancer. Now, She's in Another Fight for Her Life," did any of you read or hear about this?

   iv. On August 17, 2019, CNN published a story about Erika Zak entitled "'Mommy can't do this for much longer': Waiting for a liver transplant, she prepares her family for the worst," did any of you read or hear about this?

   v. On May 13, 2018, CNN aired and published a story about Erika Zak entitled "A dying mother's plea for her life," did any of you see, read or hear about this?

  c. For any reason, does anyone feel like they already have an opinion or has made a decision about this case?

  d. If during the course of this discussion you realize you have some knowledge of or connection to the facts or parties, please raise your hand and let me know.

   **i. <u>Defendants' Objections</u>**

Plaintiff's questions citing to various specific press/news articles are antithetical to the Court's instructions to the jury not to research the case, which includes any publicity. Reading off titles of news articles should be avoided as it will only serve to entice a juror to access publicity on their own contrary to the Court's instructions. Plaintiff's proposed questions also directly reference news articles referenced in Defendants' Motion *in limine* 13. (Docs. 313-314).

    b. **Defendants' Version**

        a. Is there anyone on the panel that has heard or is aware of anything about the plaintiffs or defendants in this case?

        b. If so, Private *voir dire*.

        c. For any reason, does anyone feel like they already have an opinion or has made a decision about this case?

          i. **Plaintiff's Objections**

Defendants' version is too vague to have value. Erika Zak's story has been highly publicized through national media and only specific questions on the published material will appropriately determine if a potential juror has any pre-acquired knowledge of the case.

    3. **Knowledge of the Parties**

The parties agree on the proposed questions, except Plaintiff refers to Memorial Sloan Kettering as "MSK" whereas Defendants prefer reference to "Memorial." Defendants also object to the number of Plaintiff's witnesses as it should be narrowed down to who is actually called to testify at trial. See Defendants' Motion *in limine* No. 13 (Docs. 313-314). Allowing Plaintiff to list witnesses not called at trial is a transparent attempt to indicate a high level of sympathy based on the quantity rather than the quality of witness testimony. Plaintiff disagrees and would refer this Court to his response. Dkt. No. 364 & 365.

        a. Have you or someone close to you received medical care at Memorial Sloan Kettering Cancer Center, and if so, how would that impact you if you were picked to serve on this jury?

        b. Have any of you or someone you know ever been treated by one of the following doctors?

          i. Dr. Constantinos Sofocleous, Interventional Radiologist at Memorial?

    ii. Dr. Nancy Kemeny, Oncologist at Memorial?

    iii. Dr. Ronald DeMatteo, formerly a surgeon at Memorial?

    iv. Dr. Skye Mayo, Surgical Oncologist, or Dr. Charles Lopez, Medical Oncologist, at Oregon Health and Science University?

    v. Dr. David Bernstein, Hepatologist at Northwell Health?

    vi. Dr. Aaron Fischman, Interventional Radiologist at Mount Sinai?

    vii. Dr. S. Nahum Goldberg, Interventional Radiologist at Hadassah University Hospital?

    viii. Dr. Douglas Rubinson, Oncologist at Brigham and Women's Hospital?

    ix. Dr. Michael Sadler, Diagnostic Radiologist at Beth Israel?

    x. Dr. Neil Theise, Pathologist at New York University?

    xi. Dr. Rakesh Navuluri, Interventional Radiologist at The University of Chicago?

c. List plaintiff's witnesses and ask if anyone knows them?

    i. Scott Powers

    ii. Stephen Powers

    iii. Kathy Zak

    iv. Chloe Metz

    v. Julia Ziegler-Haynes

    vi. Ariel Dunitz-Johnson

    vii. Claire Cain Miller

    viii. Mickael Romaine

    ix. Doug Ulman

    x. Stan Smith

4. **Acceptance of the law**

 a. **Plaintiff's Version**

 a. Medical malpractice is a breach of a doctor's duty to provide his or her patient with medical care meeting a certain standard. A doctor may deviate from the accepted standards of medical practice by failing to possess the reasonable degree of knowledge or skill that is ordinarily possessed by the average physician in the locality where he practices; failing to use ordinary and reasonable care, diligence, or skill; or failing to use his or her best judgment.

  i. Do you believe or agree with the law of medical malpractice?

  ii. Can you consider awarding millions of dollars in money compensation for medical malpractice if the evidence calls for it?

  iii. Is there anything about the law of medical malpractice that would keep you from being a fair and impartial juror?

 b. Lack of informed consent means the failure of the person providing the professional treatment to disclose to the patient such alternatives, reasonably foreseeable risks, and benefits involved as a reasonable doctor under similar circumstances would have disclosed, in a manner permitting the patient to make a knowledgeable evaluation.

  iv. Do you believe or agree with the law of lack of informed consent?

  v. Can you consider awarding millions of dollars in money compensation for lack of informed consent if the evidence calls for it?

    vi. Is there anything about the law of lack of informed consent that would keep you from being a fair and impartial juror?

  c. A wrongful death claim allows the estate of a person to recover from the party whose wrongful act, neglect, or default caused that person's death.

    vii. Do you believe or agree with the law of wrongful death?

    viii. Can you consider awarding millions of dollars in money compensation for wrongful death if the evidence calls for it?

    ix. Is there anything about the law of wrongful death that would keep you from being a fair and impartial juror?

  d. The plaintiff must prove his case by the greater weight of the credible evidence. This is a lesser burden than in a criminal case, for example, where the burden of proof is beyond a reasonable doubt.

    x. Can you follow the Court's instructions regarding this burden of proof or would you hold the plaintiff to a higher burden of proof?

  e. The law provides that a medical facility or hospital that employs a doctor is responsible for the negligence or malpractice of doctors and all its employees.

    xi. Can you follow this law and hold a hospital responsible when the facility itself did not cause the injury, but it employed the doctors that performed the procedure?

  i. **<u>Defendants' Objections</u>**

Plaintiff's questions detailing elements of each cause of action akin to charges from the PJI is not proper for *voir dire*. The reading of charges is reserved for the Court's instructions at the end of summations. Potential jurors should not be informed of the amount of money at issue and

suggesting a sum during *voir dire* is not appropriate. The issue is whether a prospective juror can compensate fairly and justly without the Court suggesting numbers or ranges. The Court can inform prospective jurors what the burden of proof is, but should not go into how the burden of proof is different in a criminal case, which is not relevant.

    b. **Defendants' Version**

        a. Can you accept the law as given to you?

        b. Medical malpractice cases are tried in one unit and so you will receive information concerning damages, regardless of whether you feel the plaintiff is entitled to them. It will be up to you to decide if the plaintiff is entitled to any damages at all. However, if you reach that decision can you justly and fairly compensate plaintiff for her alleged damages?

            i. Is there anything about the concepts of medical malpractice, informed consent or wrongful death that would keep you from being a fair and impartial juror?

        c. The plaintiff must prove his case by the greater weight of the credible evidence.

            i. Can you follow the Court's instructions regarding this burden of proof?

    i. **Plaintiff's Objections**

Plaintiff's definitions are plain and common language, drawn directly from the New York Pattern Jury Instructions for Medical Malpractice (PJI 2:150, p. 46); Lack of Informed Consent (PJI 2:150A, p. 102); and Wrongful Death (PJI 2:320, p. 1062). N.Y. Pattern Jury Instruction, Vol. 1B (2022). Defendants' version fails to attain acceptance of the law for Plaintiff's lack of informed consent and wrongful death causes of action, as well as the law that holds Memorial liable for its employee's negligence. Defendants' version again attempts to limit Plaintiff's medical malpractice

cause of action to just one claim. As the New York Pattern Jury Instructions clearly provide, "[e]ach claimed departure from accepted medical practice should be the subject of a separate jury question." N.Y. Pattern Jury Instruction, Vol. 1B, PJI 2:150, p. 48 (2022) (citing *Steidel v Nassau*, 182 AD2d 809, 582 NYS2d 805 (2d Dept 1992); *Davis v Caldwell,* 54 NY2d 176, 445 NYS2d 63, 429 NE2d 741 (1981); *Harris v Parwez*, 13 AD3d 675, 785 NYS2d 781 (3d Dept 2004)).

5. **Sympathy**

   a. **Plaintiff's Version** – none

      i. **Defendants' Objections**

   Plaintiff has left out any reference to sympathy, and the parties are permitted to determine if any prospective juror has had experiences in their lives that make them unfairly prone to sympathy and partiality. Indeed, the Court will instruct the jurors at the end of summations that they are not to be affected by sympathy for any of the parties. See PJI 1:27.

   b. **Defendants' Version**

      a. This case involves a sympathetic situation involving the death of a young wife and mother. You will be called upon to set aside any feelings of sympathy and decide the case fairly based on the evidence. Would you be able to set aside feelings of sympathy in deciding this case?

      i. **Plaintiff's Objections**

   While the law requires jurors to be fair and impartial, and consider only competent evidence it does not explicitly require them to check their feelings at the door. This question attempts to stoke statements from prospective jurors which all the others will hear and which will poison and polarize the panel.

6. **<u>Bias towards or against the justice system</u>**

   a. **<u>Plaintiff's Version</u>**

      a. Do any of you have feelings about personal injury lawsuits, based on your own experiences, things you've read or heard, opinions, feelings or beliefs, that might make you lean one way or another at the start of this case?

      b. Does anyone believe that because of this, you might not be able to be a fair and impartial juror in this case?

      c. Does anyone have beliefs or feelings about medical malpractice lawsuits?

      d. If so, would it be fair to say that you could not assure the court that you could be completely fair and impartial because of your feelings and beliefs against medical malpractice lawsuits?

      e. Who agrees with this statement: "I would have a hard time awarding money damages for pain and suffering in a medical malpractice case?"

      f. If you agreed, would it be fair to say that you could not assure the court that you could be completely fair and impartial because of your feelings and beliefs against pain and suffering damages?

      g. Personal injury cases generally and medical malpractice cases specifically involve human anatomy, procedures and bodily functions that may make some uncomfortable to hear or see. Is there anyone for whom this might be a problem?

      i. **<u>Defendants' Objections</u>**

The Court can ask a question about a prospective juror's bias about the justice system, and if the answer is yes, can follow-up. No one can guarantee impartiality. All one can ask of a prospective juror is to give best efforts and follow the Court's instructions, and if a juror is unable

to do so, to let the Court know.  Plaintiff's version also asks repetitive questions covered in other sections.

    b. **Defendants' Version**

        a. Do any of you have feelings about personal injury lawsuits that might make you unable to be an impartial juror in this case?

            i. **Plaintiff's Objections**

Defendants' version fails to solicit meaningful information regarding potential bias of the panel towards the instant case. Individuals may hold strong beliefs specific to personal injury and medical malpractice lawsuits. Or people may hold strong beliefs regarding pain and suffering damages. These beliefs need to be discovered in *voir dire* for a fair and impartial panel.

7. **Personal beliefs**

    a. **Plaintiff's Version**

        a. Does anyone believe patients should not sue doctors?

        b. Does anyone believe that patients should not sue hospitals?

        c. Does anyone believe that a doctor who is a specialist knows the appropriate course of treatment and you would defer to their judgment?

        d. Memorial Sloan Kettering Cancer Center is one of the biggest cancer treatment centers in the country. Would anyone here, regardless of the facts, have trouble holding Memorial Sloan Kettering accountable?

        e. If the Plaintiff proves to you that the Memorial Sloan Kettering doctors committed medical negligence, how many of you would have trouble finding against their employer, Memorial Sloan Kettering?

    f. If a defendant doctor is employed by Memorial Sloan Kettering, how many of you would have trouble finding against Memorial Sloan Kettering as their employer?

    g. If any of the doctors involved in this case are shown to be leaders in their field of medicine, how many of you, regardless of the evidence, would have trouble holding doctors such as these for medical negligence?

    h. How many of you would have trouble believing that a highly-skilled doctor could make an error of judgment?

    i. How many of you would have trouble believing that a highly-skilled doctor could fail to take reasonable care in performing a procedure?

    j. Would you have trouble believing that a doctor could fail to warn their patients about the known risks and alternatives of a procedure?

    k. Could you put aside that a young woman had stage IV colon cancer in finding that she was injured by a doctor, or do any of you harbor a feeling that "she was sick anyway, so it doesn't matter"?

    l. Who disagrees with this statement: "A plaintiff in a medical malpractice case should receive compensation for all damages caused by the fault of a medical provider, even if the plaintiff was more susceptible to injury than a normally healthy person would have been, and even if a normally healthy person would not have suffered injury?"

    **i. Defendants' Objections**

Defendants' version is appropriate and sufficient to elicit information from the jurors about personal beliefs concerning lawsuits and doctors. The Court can follow-up if a prospective juror indicates some bias in this regard. All of Plaintiff's questions are leading and improperly suggest

8432770

potential biases to the prospective jurors. The question should be open-ended and it is for the Court to determine if a response indicates a bias warranting follow-up questioning.

    b. **<u>Defendants' Version</u>**

        a. Does anyone believe that in the appropriate circumstance lawsuits are not justified?

        b. Does anyone have feelings, good or bad, about the medical profession that they feel would interfere with their ability to be impartial?

        c. Do you understand that there are two separate issues in this case, first whether the doctor departed from accepted medical practice, and second if that occurred, whether that caused plaintiff's death. Can you view each of these issues separately and distinctly?

        i. **<u>Plaintiff's Objections</u>**

Defendants' version fails to solicit meaningful information regarding potential bias of the panel towards the instant case. The hospital and doctors in this case hold a unique esteem in the community and potential jurors may hold beliefs that prevent them from being fair and impartial.

Defendants' question (although seemingly meant to confirm that the jury can view Plaintiff's claims separately) actually serves to conflate the issues. Plaintiff brings multiple claims of medical malpractice. This question will interject bias into the panel by making it appear as if Plaintiff's multiple medical malpractice claims were won or lost as one.

8. **<u>Experience with Litigation</u>**

    The parties agree to the following questions:

        a. Have you, or anyone close to you, been involved in a lawsuit, potential lawsuit, or legal case, either as the person bringing the suit or defending the suit?

    b. What were the circumstances and would they interfere with your ability to sit impartially?

9. **Personal experiences**

   The parties agree to the following question:

   a. If anyone who has an issue involving their own medical care they do not wish to disclose to everyone, please indicate you have something to discuss about a question but do not want to do so in front of the group.

   b. Have you, or anyone close to you, had cancer or undergone treatment for cancer? And if so, would this interfere with your ability to sit as an impartial juror in this case?

   c. Have you, or anyone close to you ever worked in the medical field? If so, in what capacity and would that interfere with your ability to sit impartially in this case?

10. **Lawyers in the case**

    The parties agree to the following questions:

    a. Do you know any of the lawyers or their firms that will be participating in this case?

        i. Hendler Flores Law, PLLC

        ii. Scott Hendler

        iii. Laura Goettsche

        iv. Kaufman Borgeest & Ryan LLP

        v. Andrew Kaufman

        vi. Betsy Baydala

11. <u>**Miscellaneous**</u>

    a. <u>**Plaintiff's Version**</u>

        a. Do you know or recognize anyone else on the panel of potential jurors, or in this courtroom; do you follow them on social medial or are your Facebook friends or connected by LinkedIn, TikTok, Instagram, Twitter, a dating app, or any other digital platform?

            i. If so, who and how do you know this person?

        b. If chosen for this jury, can you join the other jurors in taking an oath swearing not to look up any aspect of this case and follow the Court's instructions on not using social media, blogs, Internet, or news reporting on any matter regarding this case, or evidence or facts you hear in this case?

        c. If chosen for this jury, can you join the other jurors in taking an oath swearing not to research any of the issues or evidence you hear in the case, and that you will rely solely on the evidence you hear during trial?

        d. Do you agree with this statement: "When a patient undergoes a complex medical procedure, complications may happen and that's just a risk one takes?"

        e. Do you agree with this statement: "I would tend to hold an individual suing a medical provider to a higher burden of proof with respect to the evidence than I would hold the medical provider."

        f. Knowing that you have not yet heard any evidence in this case, do any of you feel like you are already leaning toward one side or the other?

      i.  **<u>Defendants' Objections</u>**

Plaintiff's version asks leading questions and suggests to prospective jurors to look into certain things, which is the antithesis of the Court's role asking them not to do so. Plaintiff's questions go into medical issues that are far beyond the role of *voir dire*, and are covered by questions about how one feels about the medical profession. The burden of proof question was also covered above.

    b.  **<u>Defendants' Version</u>**

        a.  Do you know or recognize anyone else on the panel of potential jurors, or in this courtroom?

            i.  If so, who and how do you know this person?

        b.  If chosen for this jury, can you take an oath swearing not to look up any aspect of this case and follow the Court's instructions on not performing research on this case using social media, or the Internet, or any other source outside of the courtroom?

        c.  Knowing that you have not yet heard any evidence in this case, do any of you feel like you are already leaning toward one side or the other?

      i.  **<u>Plaintiff's Objections</u>**

Plaintiff's version is simply more correct for a modern age. Potential jurors may not "know" each other, such that they have never met, but may nonetheless be very familiar with each other because of the reach of social media. Plaintiff's version also includes several statements to inquire into potential bias. These questions are necessary to ensure a fair and impartial panel.

Dated: September 1, 2022

                                          Respectfully submitted,

HENDLER FLORES LAW, PLLC

By: _____
Scott M. Hendler
shendler@hendlerlaw.com
Laura A. Goettsche
lgoettsche@hendlerlaw.com
901 S. MoPac Expressway
Bldg. 1, Suite #300
Austin, Texas 78746
Tel: (512) 439-3200
Fax: (512) 439-3201
**ATTORNEYS FOR PLAINTIFF**

KAUFMAN BORGEEST & RYAN LLP

 /s/ Betsy D. Baydala

_____
Betsy D. Baydala
Andrew S. Kaufman
*Attorneys for Defendants*
120 Broadway, 14th Floor
New York, NY 10271
Telephone: (212) 980-9600
Fax: (212) 980-9291
bbaydala@kbrlaw.com
akaufman@kbrlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 1, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record for Defendants.

_____
Scott M. Hendler